## Nichols & Shepard Company v. Stubbs Thresher Company, et al.

(Decided November 5, 1914.

### Appeal from Hickman Circuit Court.

1. Sales—Breach of Warranty—Remedies of Buyer—Compliance With Conditions of Contract.—A contract for the sale of a traction engine warranted the machine, and provided that if within five days from its first use it should fail to fill the warranty, notice should be given to the seller and reasonable time allowed to remedy the defect, and if, after notice and opportunity to remedy had been provided, the machine could not be made to fill the warranty, the machine should be returned by the buyer. The purchasers, with knowledge of certain defects, retained and used the machine for a period of 10 months without offering to return it. Held, that as the purchasers failed to return or offer to return the machine within a reasonable time, the sale became absolute, and the purchasers' liability on the purchase money notes was fixed.

2. Sales—Warranty—Authority of Local Agent.—Where, under the terms of a written contract of sale of a traction engine, agents were not authorized to make any change in the contract, and after the contract and purchase money notes had been executed, the agent told the purchasers to take the engine home or try to take it "at the company's risk and the company's expense," such representation was not within the agent's authority, and did not operate as a waiver of a condition of the contract requiring the purchaser to return or offer to return the engine within a reasonable time.

BENETT, ROBBINS & ROBBINS and F. C. STILLSON for appellant.

R. L. SMITH for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On May 20, 1912, plaintiff, Nichols & Shepard Company, a corporation, entered into a written contract with

the defendants, Stubbs Thresher Company, a partnership composed of E. C. Whayne, F. E. Jordan, Ely Whayne and others, by which it sold and agreed to deliver to defendants at Fulton, Kentucky, one double cylinder traction engine, in payment for which defendants agreed to deliver to plaintiff an old engine which they had on hand, and to execute their note for $838, payable September 1, 1912.

On June 3, 1912, the engine sold by plaintiff was delivered to defendants at Fulton, Kentucky, and on the same day defendants executed their note for $838, secured by a mortgage on the engine. Plaintiff brought this action against the defendants to recover on the note in question and enforce its mortgage lien. Defendants pleaded a breach of warranty, and asked that the contract of sale be rescinded. On final hearing the chancellor dismissed plaintiff's petition, and adjudged the return of the old engine which defendants had delivered to plaintiff as part of the purchase price, or in default thereof that plaintiff pay to defendants the sum of $1,000 which was fixed as the value of the old engine. From that judgment plaintiff appeals.

It appears that after the delivery of the double cylinder traction engine and the execution of the note for $838 the defendants took charge of the engine at Fulton and drove it from that point to Mrs. Sublett's place in Clinton, Kentucky, a distance of twelve or fourteen miles. In bringing the engine from Fulton to Clinton some of the cogs in the steering-gear were broken. The engine remained at Mrs. Sublett's some six or eight days. While there G. W. Long, the local salesman from whom the engine was bought, replaced the broken cogs. The engine was then taken from Clinton to the farm of E. C. Whayne, one of the defendants. Thereafter the engine was attached to a separator and used in threshing wheat.

The threshing was begun on July 5, and continued to July 19. Defendants all testify that the guiding apparatus connected with the engine was worthless, and that they could not guide the engine. They had great difficulty in getting up hills. After they began threshing, they could not make the engine hold steam, although they used great quantities of wood and coal, and kept men constantly employed for that purpose. It is also in proof that plaintiff's agent, G. W. Long, was present while defendants were carrying the engine home, and

he informed them that they could take it home at the company's risk.

On July 13, 1912, defendants wrote to plaintiff that the engine in question was not giving satisfaction, and that they were not able to guide it. The letter further stated that the front wheels would not lead the engine, and that the engine would not pull with less than 130 pounds of steam. The letter requested that someone be sent at once to fix the engine. In reply to this letter plaintiff, on July 16th, wrote the defendants that the engine was not guaranteed to give satisfaction, but guaranteed to do its work; that if the roads were slippery, and the front wheels of the engine would not stay on them, and they wanted the engine to pull to its capacity, they should carry steam enough and it would pull; that in order to pull the engine, 140 pounds of steam should be carried at all times. About the same time plaintiff's manager at Nashville, who had also received a copy of plaintiff's letter of July 13th, wrote to defendants that there was nothing in their letter that showed that the engine was wrong; that the front wheels of the engine were the best that could be produced, and that if they wanted the engine to pull they should carry more than 130 pounds of steam. In this letter he asked what was wrong about the engine, and what there was about the engine that they wanted plaintiff to fix. On September 26, 1912, defendants wrote plaintiff that the engine was not doing its work; that he had been advised by plaintiff to keep it off slick roads, and by the agent at Nashville to grease it, but neither of them had said anything about fixing it; that they were ready to comply with their part of the contract if plaintiff would comply with its contract; that they were willing to pay in full any day that plaintiff would fix the engine. On November 23, 1912, defendants wrote plaintiff to the effect that they had stated in their previous letters that they were ready to settle for the engine as soon as it was put in good running order; that they had written plaintiff in July that the engine was not coming up to contract, and asked it to send someone to fix it, but their letter was ignored; that plaintiff need not expect any payment on the note until it fixed the engine. Later the note was placed in the hands of plaintiff's attorney for collection, and defendants were advised of the fact that suit would be brought. On March 19, 1913, defendants, in a letter to plaintiff, made a proposition to plain-

tiff to extend the contract for one year without interest if it would fix the engine so it would fulfill the contract; that if they failed to do so they would take same back and pay for the old engine. On April 16, 1913, defendants wrote plaintiff that as it had failed to fix the engine, they therefore surrendered said engine to plaintiff at Stubbs, Kentucky, on the M. & O. Railroad. The engine in question was sold under the following warranty:

"Each engine, separator, feeder, wind stacker, weigher, bagger or other machine, or attachment, above described, is purchased and sold as a separate and distinct machine, at a stipulated, separate and agreed price, and subject to the following express warranty and agreement, and none other, viz.:

"First. That each of said machines is well made and of good materials. If any part of a machine (except belting) should fail during the first season in consequence of a defect in material or workmanship, the vendor has the option to repair the same, or to furnish a duplicate of any defective part, free of charge, except freight, after presentation of the defective piece, clearly showing a flaw in the material, at the factory, or to the dealer through whom said machinery was bought. Defective parts do not involve damages, or a return of the machinery.

"Second. That each of said machines, with proper management, is capable of doing more and better work than any other machine made of like size and proportions working under the same conditions and on the same job; conditioned, that if within five days from its first use, it shall fail to fill this warranty, written notice shall be immediately given by the purchaser to Nichols & Shepard Co., at Battle Creek, Mich., by registered letter, stating particularly how and wherein it fails to fill the warranty. Reasonable time shall be allowed the vendor to get to the machine with its workmen and remedy the defect, if any there be (unless it be of such a nature that a remedy may be suggested by letter), the purchaser to render friendly assistance and co-operation. (If, after giving the notice and opportunity to remedy the difficulty complained of, as above provided, the machine complained of cannot be made to fill the warranty, it shall be returned immediately by the purchaser to the place where it was received, with the option of the vendor either to furnish another machine, in place of

the machine so returned, which shall perform the work, or return the money and credit the notes which have been received by the vendor for the same with its purchase price, and thereby rescind the contract to that extent, or the whole, as the case may be, and be released from any further liability herein.) The failure of any separate machine shall not affect the contract or liability of the purchaser for any other separate machine which is not defective.

"The separate prices herein referred to are based upon the vendor's list of prices for 1912, and the amount to be credited for the return of any machine under this warranty shall be in proportion to the aggregate price herein expressed, as the list price of the same machine is to the aggregate list price of all the machines herein ordered, and old machinery taken in trade shall not be taken into account.

"It is expressly agreed that the vendor shall be liable only for the return of cash and notes payable to its order actually received by it, and not for freight paid nor for any machinery or other property taken hereon as part payment.

"Failure to pay for the machinery at the time and place of delivery and in the manner above provided; or failure to give any of the notices in writing as provided for herein; or failure to render friendly assistance and co-operation; or keeping the machinery after the five days allowed as above provided; or any abuse, misuse, unnecessary exposure or waste committed or suffered by the purchaser, shall be a waiver of the warranty and a full release of the warrantor, without in any way affecting the liability of the purchaser for the price of the machinery or notes given therefor."

The contract of sale also contains the following provision:

"No general or special agent or local dealer is authorized to make any change in this warranty. Workmen or experts are not agents and have no authority to bind the vendor by any contract or statement, neither shall the fact of any local or traveling agent or expert of the vendor rendering assistance of any nature at any time operate as an extension or waiver of the conditions thereof."

In the case of Wisdom, et al v. Nichols & Shepherd Co., 97 S. W. 18, there was a sale of a threshing machine and wind stacker under a warranty identical with that

under consideration. After holding that the contract was not obtained by fraud, the court said:

"It therefore follows that the rights of appellants must be determined by the provisions of the written contract. Contracts similar to this have been before this court in a number of cases, and it has uniformly been ruled that, when the parties to a contract have agreed upon the warranties and the remedies that accrue upon a breach of them, these remedies constitute the only relief in this particular that the purchaser has, and he must look to his contract, and be governed by its stipulations. The contract here affords to the purchaser a remedy, if the warranty is broken, that will at once relieve him from all liability. He can return the machine and demand his purchase notes, thereby canceling the contract; but if he elects to retain the property, in its defective condition, he must pay the purchase price. Garr-Scott & Co. v. Hodges, 90 S. W., 580, 28 Ky. L. Rep., 889; J. I. Case Threshing Machine Co. v. Lyons, 72 S. W. 356, 24 Ky. Law Rep., 1862; McCormick Harvesting Machine Co. v. Arnold, 76 S. W. 323, 25 Ky. Law Rep., 663; Frick v. Morgan & Co., 69 S. W. 1072, 24 Ky. Law Rep., 836; Nichols & Shepherd Co. v. Caldwell, 180 S. W., 1099, 26 Ky. Law Rep., 136. The purchaser discovered the defective condition of the machine on the second day after it was started, and, as provided in the contract, he at once notified the seller; but after notifying him, he continued to keep and use the machine, although the seller failed to remedy the defect, and it was not fulfilling the warranty. Upon the failure of the company, after receiving the notice, to repair the defects or comply with its warranty, the purchaser has a reasonable time within which to return the machine, and demand the cancellation of the contract; but he cannot retain the machine, and also refuse to pay for it. This contract is not, as counsel contend, unilateral or unreasonable, nor does it leave the buyer entirely without remedy if he sustain damage by the failure or refusal of the company to comply with its warranty. If the purchaser is compelled to and does return the machine because the seller fails or refuses in a reasonable time after receiving notice to repair it or comply with his warranty, he would have a cause of action against the seller for the damages resulting to him."

Even if we concede that defendants' letter of July 13th was sufficiently definite to apprise plaintiff of what was wrong with the engine, and that it was sent to plain-

tiff within a reasonable time, and that notwithstanding this fact plaintiff failed to make the warranty good within a reasonable time, yet neither the letter of July 13th nor the subsequent letters of defendants referring to that letter, were of themselves sufficient to justify a rescission of the contract, notwithstanding the preliminary notice and plaintiff's failure to make the engine comply with the contract. Defendants, under the terms of the contract, were also required either to return the machine or to offer to return it within a reasonable time. This the defendants failed to do, and with full knowledge of the fact, as they claimed, that the engine would not steer or steam properly, they continued to use the engine during the threshing season of 1912, and then put the engine in a place where it was exposed to the weather. In their letter of September 29, 1912, they did not offer to return the engine. Indeed, they retained the engine for about ten months after they had knowledge of the fact that it would not do good work, and then surrender it at a place different from the place of sale. Defendants attempt to excuse themselves for not returning the engine to Fulton, the place of sale, on the ground that it was dangerous to operate the engine. Even if this be true, it would not have interfered with their making an offer to return it within a reasonable time. In the case of McCormick Harvesting Machine Co. v. Arnold, 25 Ky. L. R., 663, 76 S. W., 323, the court had before it a case where there was no offer on the part of the purchasers to return the machine until three months after its delivery. It was held that they had retained the machine an unreasonable length of time, and they were estopped to deny their liability on the note. In the present case defendants kept the engine for ten months without offering to return it. We therefore conclude that having refused to return or offer to return the machine within a reasonable time after their discovery of its alleged unfitness to perform its work according to the warranty, the sale became absolute, and defendants' liability on the note was fixed.

While recognizing the above principles, counsel for defendants insist that the facts of this case bring it within the rule laid down in Nichols & Shepherd Co. v. Caldwell, 80 S. W. 1099, because Long, the local agent, when they were driving the engine, and when he saw the difficulty they were having, told them to take it on home, or try to, at the "company's risk" or the "company's

expense." In the case relied on the contract was executed but the purchaser had never signed the notes. The general manager of the company which sold the machinery induced the purchaser to give the notes by assuring him that he would make the machinery all right. After using the machine for twenty days and finding it would not do the work, the purchaser, who had not only given the verbal notice to the vendor's local salesman, but to its general manager, that the machine would not work, also gave notice by registered letter to the vendor at Battle Creek, Michigan. At the same time he offered to return the machine. It was held that it was within the scope of the apparent authority of the vendor's general manager to make a contract modifying the written contract which had formerly been made, and that the purchaser was entitled to rescind, though he had not given the notice required by the written contract, and though he continued to use the machine with knowledge of its defectiveness. In the present case the alleged representation was made, not by plaintiff's general manager, but by its local salesman. The statement was made after the contract and notes had been executed. The defendants are intelligent men, and show that they were well acquainted with the contract under which they purchased the engine. It is not charged that they were induced to enter into the contract by any fraud on the part of the local salesman. The contract apprised them of the limited authority of the local salesman. It was not only not within the apparent scope of authority of the local salesman to modify the terms of the written contract theretofore made, but the written contract expressly provided that he should not do so. In the case of Wisdom v. Nichols & Shepherd Co., *supra*, the contention was made by the purchasers of the machine that they were induced to keep the machine because of their reliance on the statement of an agent of limited authority that the machine would be put in first class order for next season. It was held that such agent was not authorized to make any change in the written contract, or any statements or representations to the purchasers subsequent to the execution of the contract that would operate as a waiver by the company of its conditions. For the same reason the representation made by Long after the execution of the contract in question cannot be regarded as a waiver of the condition of the contract requiring defendants

either to return or offer to return the engine within a reasonable time.

It follows from the foregoing that the chancellor should have adjudged plaintiff a recovery on the note sued on, and have enforced its mortgage lien.

Judgment reversed and cause remanded with directions to enter judgment in conformity to this opinion.