[No. 13803.   Department Two.   June 4, 1917.]

CASE THRESHING MACHINE COMPANY, *Respondent*, v. W. H. SCOTT et al., *Appellants*.[1]

SALES—WARRANTY—BREACH—WAIVER BY ACCEPTANCE—EVIDENCE—CONCLUSIVENESS. A satisfaction slip, expressing satisfaction with a tractor sold under warranty, signed after one day's unsatisfactory demonstration by the seller's expert, is not conclusive evidence of fulfillment of the warranty, breach of which was not seriously disputed; since there was no consideration therefor, and the slip was merely evidence of the fact, especially where its weight was lessened by the testimony of the buyer that he thought he was signing a slip to show that the expert's services were satisfactory.

SALES — CONTRACT — WARRANTY — NOTICE OF DEFECTS. A buyer's breach of a contract requiring immediate written notice to the company of any defect after a ten days' trial, is not shown where the machinery never worked satisfactorily, the seller's experts came intermittently to fix it from the time it was first delivered in April until July 10, written notice was given June 24, the seller had notice of the defects at all stages of the transaction, and the record does not clearly fix when the ten-day period should start to run.

SALES—CONTRACTS—RETURN—AMBIGUITY. Where a contract for the sale of a tractor provided for delivery on cars, a provision re-

[1]Reported in 165 Pac. 485.

quiring a return, upon rescission, "to the place where received" is too ambiguous or unreasonable to be enforcible; especially where the seller refused to tell where to deliver it.

SALES — CONTRACT—DIVISIBILITY—PARTIAL BREACH OF WARRANTY. A contract for the sale of a tractor and gang plow, which provided that the order is divisible as to each machine and attachment and that failure of any separate machine shall not affect liability for any other, is a divisible contract where the plow could be used with any traction engine capable of pulling it, although it could not be used without a traction engine; hence breach of warranty as to the tractor did not affect the liability for the plow.

SALES—RESCISSION—CONDITIONS. Relief for breach of warranty of a tractor is not precluded by the fact that the buyer demanded cancellation of the notes as a condition precedent to surrender of the machine, where it appears that an unconditional notice of defects was given stating that the machine was held subject to the order of the seller, which had the option to furnish a new machine or surrender the notes and took no steps to take possession of the machine.

Appeal from a judgment of the superior court for Douglas county, Steiner, J., entered February 27, 1915, upon findings in favor of the plaintiff, in an action on promissory notes and to foreclose a chattel mortgage, tried to the court. Modified.

*Cade & Barrows,* for appellants.
*Crollard & Crollard,* for respondent.

HOLCOMB, J.—Action by respondent, J. I. Case Threshing Machine Company, hereinafter called the company, against appellants, W. H., C. E., and L. H. Scott, to recover on three promissory notes and to foreclose a chattel mortgage on a certain steam plowing outfit.

Some time in March, 1913, one Wharf, an agent of the company, called at appellants' farm for the purpose of selling to them a plowing outfit. He examined the soil and recommended the machine finally sold as being adapted to plow that particular soil. These negotiations culminated in a

written agreement of sale, dated April 8, 1913, the material portions of which are as follows:

"J. I. Case Threshing Machine Company, Racine, Wisconsin:

"You will please ship or deliver on or before the......day of........at once (or as soon thereafter as you can furnish for transportation or delivery), to Wenatchee or other convenient station in the state of Washington in care of Wells & Morris for the undersigned purchaser the following goods:

"One Case 80 Horse Power Simple Steam Engine straw trac burning, . . . with the usual fixtures and extras furnished as part of its regular equipment.

"Also for the above machinery 1-10 bottom 14″ Case hand lift eng. gang plow stubble btm. fuel bunkers & 12″ extension rims on engine, 1 headlight, 1-16 bbl. unmtd eng tender, tank pump & hose.

"In Consideration Whereof, purchaser will receive same on cars on arrival subject to the warranty below printed and pay freight and charges thereon and pay to your order $3,325 as follows:

"Cash $....., and execute notes on company's blanks with approved security, as below; with interest at 8 per cent per annum from date until maturity and 10 per cent per annum from maturity until paid.
Note for $1,108, due Nov. 1st, 1913.
Note for $1,108, due   "    "   1914.
Note for $1,109, due   "    "   1915. . . .
Secured by proper storage, first mortgage on said machinery, and earnings thereof and also.....................
and if purchaser fails to pay said money or execute and deliver said notes and mortgage (properly filed or recorded), it is agreed as a condition hereof, that the title to said goods shall not pass, and this order shall, at the company's option, stand as purchaser's written obligation, having the same force and effect as notes and mortgage for all sums not paid in cash, and the whole amount of purchase money shall be due and payable, and the company shall stand discharged from all warranty.

"Said machinery is purchased upon and subject to the following mutual and interdependent conditions, and none other, namely:

"It is warranted to be made of good material, and durable with good care, and to be capable of doing more and better work than any other machine made of equal size and proportions, working under the same conditions on the same job, if properly operated by competent persons, with suitable power, and the printed rules and directions of the manufacturers intelligently followed. The condition of the foregoing warranty is that if, after a trial of ten days by the purchasers operating in the manner specified, said machinery shall fail to fulfill the warranty, written notice thereof shall at once be given to the J. I. Case T. M. Company at Racine, Wisconsin, and also to the dealer from whom received, stating in what parts and wherein it fails to fulfill the warranty, and reasonable time shall be given to said company to send a competent person to remedy the difficulty (unless it be of such a nature that a remedy may be suggested by letter), the purchasers rendering necessary and friendly assistance and co-operation, without compensation for labor or material furnished, and the company reserving the right to replace any defective part or parts. If, after giving the notice and opportunity to remedy the difficulty complained of, as above provided, the company fails to send a representative to remedy said difficulty, (or to suggest an efficient remedy by mail) or if, upon its attempt to remedy the same, the machinery cannot be made to fill the warranty, the part that fails is to be returned immediately by the purchaser, free of charge to the place where it was received, and the company notified thereof; whereupon the company shall have the option either to furnish another machine, or part, in place of the one so returned, which shall fill the warranty, or to return the notes, or money received for the machine or part so returned, and the contract shall be rescinded to that extent, and no further claim made on the company."

The outfit was delivered to appellants at Wenatchee, on cars, on the date of this instrument, and was removed to appellants' farm, some twelve miles distant. While the evidence is somewhat in conflict as to whether the machine fulfilled the warranty, it cannot be successfully disputed that great trouble was experienced in operating it; in fact, the engine would not generate sufficient steam to haul the plows

until the arrival of one of the company's experts named Dunseth, who changed the grate and generated 175 pounds of steam, when a small amount of land was plowed. At that time only eight bottoms of the ten were used and a portion of the time only six, and the plowing that was done was not deep enough. As the wind blew away the straw used for fuel, the plowing was discontinued for the day, and that night, at the solicitation of Dunseth, the appellants signed a satisfaction slip stating that the machine was working to their satisfaction and filling the warranty. Controversies concerning the return of the machine were had between appellants and the company, and as appellants maintained that the machine failed to do the work that it was warranted to do, they refused to pay the notes and offered to return the outfit. The company thereupon commenced this action for the purpose above stated.

By way of affirmative defenses set up in their answer, appellants alleged that no liability could be fastened on them, since the machine did not meet the warranties made by the company and, because of this, the consideration of the notes failed. In reply thereto the company alleged that appellants failed to live up to certain conditions of the contract and are now estopped to complain of a breach of warranty. The lower court made findings of fact in conformity with the company's version of the evidence, and entered a judgment as prayed.

The only conclusion that can be drawn from the record is that the plowing outfit never did fulfill the warranty or plow appellants' ground in a satisfactory manner. Nor is it seriously contended by the company that it did, but it asserted that appellants, because they signed the satisfaction slip above referred to, are not in a position to complain of a breach of warranty. Appellant W. H. Scott testified that he thought he was signing only a slip to certify that Dunseth's services on that day were satisfactory. In any event, this satisfaction slip is not absolutely binding on appellants, as they

received no consideration from the company for signing the same.. It is 'nothing more than evidence, more susceptible of proof by reason of its being in writing, but evidence nevertheless to be considered in connection with all the other evidence in determining whether the warranties had been. breached. The court found that the testimony indicates that, subsequent to the execution of this slip, the outfit did not do. good plowing, but that the soil and season were not right.. The court does not find that the condition of the soil and season was the cause of the poor plowing or prevented the engine from generating steam and developing power, nor could he so find from the testimony.

Appellants assert that this finding brings them within the rule announced in *Scott v. Keeth*, 152 Mich. 547, 116 N. W. 183, that an acceptance by a purchaser, after a test which leads him to believe the goods satisfactory, does not waive his right of action for a breach of warranty discovered later. While we do not think the instant case falls within the rule in that case, as the warranty there was for a fixed period of time, yet the fact in this case, that it clearly appears, as evidenced by the court's finding, that the outfit did not fulfill the warranty subsequent to the test made by Dunseth, tends to lessen the weight of the satisfaction slip as evidence and to support the testimony of appellant W. H. Scott, that he thought he was signing only a slip to show that Dunseth's services were satisfactory, to such an extent that we think the trial court erred in finding the machine worked to the satisfaction of appellants and was filling the warranty as stated in the satisfaction slip. We are also greatly influenced in reaching this conclusion by the almost undisputed evidence showing that the machine never did furnish power to plow properly or fulfill the warranty.

It is argued that appellants have breached that part of the contract requiring immediate written notice to the company and its local agent of any defect after a ten days' trial. It is difficult to ascertain from the record when this ten-day

period should start to run, as the machinery never worked satisfactorily and experts of the company came intermittently to fix it from the time it was first received by appellants to July 10, 1913. We can see no merit in this argument, as written notice of the defects was given to the company and its local agents on June 24, 1913, and the company, at all stages of the transaction, had notice of the defects, as shown by the frequent visits of their experts to appellants' farm, and this was the only purpose of inserting a clause requiring such notice.

Respondent next complains that that portion of the contract requiring the return of the defective machinery to the place where it was received has not been complied with by appellants. The contract provided: "In consideration whereof, purchaser will receive same on cars on arrival subject to the warranty below printed  .  .  ." In view of this provision and the fact that the machinery actually was received by appellants on cars, it is apparent that the provision requiring the return of the machinery to the place where it was received means literally what it says or else it is so ambiguous as to be incapable of enforcement. If it does mean a physical return of the outfit to the cars at some unnamed place, it is unreasonable and unenforceable. Literal compliance would require the purchaser to commit a trespass. *Case Threshing Machine Co. v. Huber*, 160 Mich. 92, 125 N. W. 66, 32 L. R. A. (N. S.) 212; *Osborn v. Rawson*, 47 Mich. 206, 10 N. W. 201. Surely appellants should not be made to negotiate with the railroad company for the right to place the machinery on its property, and no other place of delivery is suggested by the company, unless it might be to Wells & Morris, their local agents. But this suggestion cannot avail the company in view of Morris' testimony that he made it a point not to tell appellants where to deliver it.

The court found that the engine is a separate machine from the plow, under the provision of the contract which reads as follows:

"This order is divisible as to each machine and attachment ordered, and the failure of any separate machine or attachment to fill the warranty shall not affect the liability of the purchaser for any other machine or attachment hereby ordered."

Since there is no evidence that the plows did not fulfill the warranty, the company urges that under no circumstances could appellants escape liability for the purchase price of the plow, which the court found to be $700. In spite of counsel's ingenious argument that the plows and engine were inseparable and so contemplated by the contracting parties, since they were sold at one time and for one purpose, we are inclined to uphold the trial court's ruling in this respect. The true test seems to be that the different parts are separate and divisible if the part that does fulfill the warranty is useless without the part that fails to do so. In the instant case, it is true the plows would be of no use to appellants without some means of pulling them, but obviously any kind of a traction engine capable of generating enough power could be used in pulling the plows, as they are not made to be used with a special kind of an engine and so be incapable of use with any other. In reaching this conclusion we are not unmindful of the case of *Womach v. Case Threshing Machine Co.*, 62 Wash. 661, 114 Pac. 509. In that case the contract construed was practically the same as the one here involved. A threshing machine outfit was sold which included a separator and appurtenances, the separator alone failing to fulfill the warranty, and it was sought to hold the vendee liable for the appurtenances, consisting of a wind stacker, feeder, bagger and spout and separator brake. It was there held that these appurtenances were but a part of the separator, and would be utterly useless without it, as no doubt another separator of the same make and kind would be necessary to render the appurtenances of any use and value whatever. This case is therefore distinguishable on the facts.

Because the trial court found that appellants demanded the cancellation of the notes as a condition precedent to their surrender of the outfit to the company, it is now argued that appellants are precluded from any relief. Since the contract expressly gave to the company the option of surrendering the notes or furnishing a new machine, and that by attaching this condition to their offer appellants have precluded the company from exercising this option. It is unnecessary to discuss the legal phase of this question, as we do not think the facts substantiate the court's finding. It appears that, on June 24, 1913, appellants sent a written notice, both to the company at its home office and to the local agent, stating wherein the machine was defective and that it was being held subject to the company's order. No condition of any kind was attached to this notice and, in so far as can be ascertained from the record, no action was taken by the company to take possession of the outfit after receiving this notice and prior to the time it is claimed appellants demanded the cancellation of the notes before they surrendered the outfit.

The judgment against appellants is therefore modified by reducing it to the sum of $700, with interest as agreed at eight per cent per annum from April 8, 1913, and costs below.

ELLIS, C. J., FULLERTON, and PARKER, JJ., concur.