No. 21,107.

THE EMERSON-BRANTINGHAM IMPLEMENT COMPANY, *Appellant,* V. ARTHUR WILLHITE et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. REPLEVIN—*Pleadings—Demurrer.* Parts of an answer to a petition in an action in replevin examined, and no prejudice disclosed in overruling a demurrer thereto.

2. SAME—*Chattel-mortgage Sale—Right of Possession.* Where possession of personal property is demanded in an action in replevin, it is immaterial whether the right of possession is claimed by the mortgagee under his chattel mortgage or under his purchase of the property at a sale pursuant to the conditions of the chattel mortgage.

3. SALE—*Threshing Machine—Note and Mortgage—Breach of Warranty —Rescission.* Where a machine is sold by a vendor subject to a guaranty that it will perform the work for which it was purchased by the vendee, and promissory notes are given in payment therefor, which notes are secured by a chattel mortgage on the machine and other property, a complete and total failure of the machine to perform the work for which it was purchased justifies a prompt return of the property and a rescission of the contract and effects an extinguishment of the chattel mortgage.

4. SAME—*Breach of Warranty—Rescission—Return of Property.* The facts relating to a return of a threshing machine which had proved altogether worthless for the purpose for which it was bought, examined, and held that there was a substantial compliance with the contract provisions as to the place to which it was to be returned.

5. SALE—*Written Contract—Fraud and Misrepresentation—Parol Evidence.* The question of the competency of parol evidence to show fraud and misrepresentation in procuring signatures to a short and simple written instrument, waiving guaranties of an earlier contract between the parties, examined but undecided, it being held unnecessary for the determination of the present appeal.

6. SAME—*Effect of New Contract of Conditional Sale.* The facts relating to an agreement to make a second test of a machine's usefulness, after a first test had demonstrated its unfitness, examined, and held that this agreement created a new contract of conditional sale but did not reanimate a chattel mortgage covering the machine, etc., which

was extinguished by the total failure of consideration under the first contract.

7. BILL OF SALE—*Executed by Unauthorized Agent.* The execution of a bill of sale and other instruments by one unauthorized to sign them does not bind the party in whose name the instruments are signed.

8. APPEAL—*Findings of Fact Undisturbed.* Rule followed that a finding of fact as to the value of chattel property, based upon competent and substantial though conflicting evidence, cannot be disturbed on appeal.

Appeal from Ford district court; LITTLETON M. DAY, judge. Opinion filed December 8, 1917. Affirmed.

*Albert Watkins,* and *Arthur C. Scates,* both of Dodge City, for the appellant; *W. R. Baxter,* of Rockford, Ill., of counsel.

*Edgar Foster,* of Dodge City, for the appellees.

The opinion of the court was delivered by ·

DAWSON, J.: This was an action in replevin to recover possession of a steam engine. The plaintiff's claim to possession was based upon a chattel mortgage on the engine executed by the defendants Arthur Willhite and his wife to secure the payment of the purchase price of a threshing machine bought by Willhite from Reeves & Co., the business predecessor and assignor of plaintiff. Plaintiff also claimed a right of possession based upon a purchase of the engine at a sale of it pursuant to that mortgage.

The defendants' answer pleaded, and their evidence tended to prove, that they had purchased a threshing machine from Reeves & Co., the assignor of plaintiff, in June, 1910, giving promissory notes in payment therefor, and that the chattel mortgage was given on their engine and other property to secure the payment of the notes. The threshing machine was purchased by Willhite under a written contract containing the vendor's warranty of its construction, and that it would do the work of a threshing separator in a suitable and proper manner. It utterly failed in these particulars, and the plaintiff was promptly notified thereof. The machine was returned to the town of Bucklin, where it had been delivered to defendants, and plaintiff was so advised. This was in accordance with the terms of the contract of sale.

On January 28, 1911, the plaintiff's agent and the defendants effected an agreement whereby defendants promised to

give the separator another trial during the threshing season of 1911, the plaintiff in the meantime agreeing to furnish certain new parts and repairs for the machine, and to furnish a workman to help in overhauling it; and accordingly, the defendants did give the machine another fair trial, but again it wholly failed to thresh grain in a proper manner, "of which facts defendants duly notified plaintiff, but plaintiff did nothing whatever to remedy the defects or to make said separator work properly."

At the time the plaintiff's agent induced defendants to give the machine another trial, and as an inducement thereto he offered them a credit of $200 upon the original purchase price of the machine, and he produced a printed blank form of receipt, filled in the date and amount of credit, and it was signed by the parties:

"Bucklin, Kansas, Jan. 28, 1911.

In consideration of Two Hundred and $^{no}/_{100}$ . . . Dollars, to me in hand paid by Reeves & Co. (Incorporated), of Columbus, Ind., receipt whereof is hereby confessed, and for divers other good and valuable considerations, I do hereby forever release and discharge said company, its officers and agents, from any claim demand and cause of action whatsoever from any cause arising, prior to the date hereof, and do release said company from all warranty and responsibility, express or implied, growing out of any transactions heretofore had.

"Witness my hand and seal.            "ARTHUR WILLHITE, (Seal)
                                       "ETHEL WILLHITE, (Seal)
                                       "A. L. WILLHITE.
"In presence of E. E. Willhite.
                     "EMORY CROUSE, [Plaintiff's agent.]"

Defendants also pleaded, and their evidence tended to prove, that their signatures were procured to this document through the fraud and misrepresentation of plaintiff's agent, that he told them that it only contained provisions for defendants' giving the machine another trial under the same terms of guaranty as the original purchase, and that in reliance on the agent's statement of its contents, they signed it without reading it.

The trial court made findings of fact favorable to defendants and gave judgment in their behalf.

The errors specified by plaintiff will be noted.

No error can be discerned in the ruling of the trial court on the demurrer to part of defendants' answer.

Implement Co. v. Willhite.

Under the error assigned in the rendering of judgment for defendants several matters are presented.

The trial court held correctly that it was not very important whether the sale under the chattel mortgage was regular or not. If the mortgage was valid, plaintiff was entitled to possession of the engine, either as mortgagee or as purchaser under the mortgage sale. The case was tried and decided on the theory that the mortgage was void because the consideration wholly failed through the utter worthlessness of the threshing machine, and that the contract had been rescinded by defendants.

As to the original contract of purchase this theory was undoubtedly correct. The contract of sale and warranty were in evidence, the proof showed the total failure of the threshing machine to do the work in a proper manner, and the plaintiff was promptly notified and the machine was returned to the place (Bucklin) where defendants had received it. A mere breach of warranty is not necessarily a total failure of consideration, but an utter failure of the machine to do the work for which it was knowingly sold by the vendor was a total failure of consideration.

A minor point is raised that the machine was not returned to the exact place where it was unloaded from the railroad in Bucklin. It seems, however, that it was left at a suitable place in Bucklin suggested by plaintiff's agent. That was sufficient.

It is also urged that a failure of parts of the machine would not justify a rescission of the whole contract, that the contract provided against that result. It did so provide, but the evidence and the findings were that the entire machine was worthless. The trial court found:

"The evidence further shows, and it is undisputed, that the machine was practically worthless—absolutely worthless. When they took it out and tried to work with it, they threshed one stack, then they threshed it over again, the same straw, and got 88 bushels [should be read 15 bushels] or something like that, out of the same straw that they had threshed."

The net result up to this point, therefore, was a complete termination of affairs between the litigants, a fair trial of the machine, its total—not partial—failure to perform, a prompt

notification, a substantial compliance with the requirement to return, and a consequent total failure of consideration, and a consequent complete defense to the notes for payment and a complete extinguishment of the plaintiff's chattel-mortgage claim to the steam engine in controversy.

Turning then to the problems presented which arise out of defendants' agreement with plaintiff's agent to give the machine another trial in the threshing season of 1911: It is difficult to see how the written instrument which the plaintiff's agent so cleverly induced defendants to sign had any effect to reanimate the chattel mortgage which was already extinguished, even if this court were to adopt plaintiff's contention that the parol evidence of misrepresentation and fraud by plaintiff's agent, which deceived and induced the defendants to sign the instrument, was inadmissible. The written instrument, if *bona fide*, waived the guaranties of the original contract. But the whole original contract, including its guaranties and conditions, was already terminated. This view does lead to some inconsistency in the position of defendants, for they were apparently awed by the terms of the instrument renouncing the guaranties and contended that they were not bound thereby (on account of fraud), and that they might still rely on the guaranties. The court is inclined to hold that they were wrong in the latter contention, for if the guaranties could still be relied upon the whole of the original contract could and should govern also, and it cannot be said that there was a prompt return of the property to Bucklin after the second trial of the machine, such as was prescribed by the original contract. After the effort to make the machine work in 1911, and after its worthlessness was again determined, defendants left it by the roadside several miles from Bucklin.

But we do not find that the trial court exactly adopted the theory of either plaintiff or defendants touching the rights and liabilities of the parties. The finding reads:

"On the 28th of January, 1911—the machine was bought in 1910—the agent came to the Willhites in Bucklin, Kansas, and after considerable talk he agreed to fix the machine up and furnish a new grain pan and several other parts and told the Willhites that they would knock off two hundred dollars of the purchase price and give them credit on the note for two hundred dollars. That they could take the machine out

again after the harvest, after the new crop came in, and try it with these repairs, and if it did n't work good, they were to take it back."

It is just a little obscure as to which party is meant by the pronoun "they" in the last line just quoted; but the context of the trial court's findings, which were very informal and apparently delivered orally from the bench, indicates that the word "they" refers to the plaintiff company. This view makes the finding harmonize with the judgment, and accords with the trial court's further finding and judgment overruling the motion for a new trial:

"On the question of the warranty, that machine did n't fulfill the warranty. The evidence showed that clearly. They brought it back and delivered it to the place where they got it. The agent came and recognized the fact that it did n't comply with the warranty, and says, here, take it back and try it again; I will furnish certain repairs, and if you do that, I will allow you $200 on your note. He did n't pay them any $200; he allowed them a credit of $200. They testified that the agent told them that if it did n't perform right after the repairs were put on they did n't need to take it. That warranty was not continued. There was a new contract there."

In these findings it does not appear that there was any obligation to return the machine to Bucklin a second time. The second contract was for a very simple conditional sale. Defendants were to try the machine, and if it would not work there was to be no second sale.

Viewing the matter from still another angle, and again avoiding the very debatable question as to the competency of the oral evidence to avoid the force of the short and simple written instrument—for the court holds it is unnecessary to decide that point—if the warranty goes out of the case by reason of the written instrument, then it seems clear that there was in fact a new contract, an oral contract, between the parties, and that later oral contract did not provide for the return of the machine to Bucklin. And doubtless plaintiff's agent did not consider that the new contract contemplated any situation whatever where the defendants would have either a right or a duty to return the machine to Bucklin. Armed with the written instrument waiving the guaranties, his idea was that he had gotten rid of the machine for good and all, and pursuant to that theory he declined even to look the machine over or give any suggestions which might be helpful to make

it work for fear it would revive the conditions of the earlier contract which had been eliminated, if not by the first rescission, then by the written instrument which he had induced the defendants to sign. This agent testified:

"A. The next day I was driving through the country and drove by the machine but I never touched the machine in any way.

"Q. What did you say to Emerson when he asked you to go out to see the machine? A. I told him positively I could not do it. That I was a bonded man and if I went out and worked on the machine it would practically reopen the warranty."

This evidence demonstrates that plaintiff did not consider that defendants had either a right or duty to return the machine to Bucklin under any circumstances.

Another point earnestly pressed by plaintiff relates to the use, sale and barter of the machine during the year 1911 by and between the defendants. There is no evidence of use of the machine after it had failed to work at the test given it in August, 1911, as per defendants' agreement with plaintiff's agent. A bill of sale for the separator and other property from the principal defendant, Arthur Willhite, to one of his relatives, "Same is free from all incumbrance except to Reeves & Co.," was introduced in evidence; and also contract for the use of the thresher, 40 per cent of the earnings to be applied on the indebtedness of Arthur Willhite to Reeves & Co., plaintiff's assignor. This was satisfactorily explained. The bill of sale was not signed by Arthur, but by one of his brothers, and without authority from Arthur, who then resided in Indiana. The brother testified that he signed the contract agreeing to give Reeves & Co. 40 per cent "to help clean this matter up amicably if possible." Moreover, the contracts of sale and for the use of the separator were never carried out.

Finally it is urged that the trial court erred in finding the value of the steam engine to be $600.

Plaintiff's witness testified:

". . . the engine when replevined was worth $400 or $500."

The defendant, Arthur Willhite, testified:

". . . engine was worth about $600 at time it was taken in this replevin suit."

Another witness, Emerson Willhite, testified that the engine was worth about $600 when replevined—somewhere in the neighborhood of that.

All the witnesses were shown to be familiar with the value of steam engines, and the trial court was fully warranted in determining the value of the engine to be $600 on the testimony quoted.

All the other matters urged by plaintiff have been carefully reviewed, but nothing further can be discerned which would warrant discussion, and nothing approaching prejudicial error can be discerned in the record, and the judgment is therefore affirmed.