(No. 5774. February 12, 1932.)

JOHN H. TROENDLY, Jr., Respondent, v. J. I. CASE
COMPANY, Sometimes Called J. I. CASE THRESH-
ING MACHINE COMPANY, Appellant.

[8 Pac. (2d) 276.]

H. R. Turner, for Appellant.

J. H. Barnes and Walters, Parry & Thoman, for Respondent.

VARIAN, J.—Respondent brought this action originally for rescission and incidental damages on account of fraud in the inducement of a contract for the purchase of certain threshing machinery. A judgment granting this relief was reversed because of insufficiency of the evidence to sustain the same, this court holding that there had been no sufficient proof of a return or offer to return the machinery so as to entitle plaintiff to rescission, and that the oral warranties were embraced in the written contract. (*Troendly v. J. I. Case Co.*, 50 Ida. 506, 297 Pac. 1103.) Thereafter, on the coming down of the *remittitur*, plaintiff amended his complaint, without objection, claiming a breach of warranty under the contract, and defendant, by cross-complaint, set up a chattel mortgage on the machinery involved and asked for foreclosure thereof. A jury trial resulted in a verdict for plaintiff in excess of the amount proven to be due defendant under the chattel mortgage. No relief whatever was granted

under the cross-complaint. Defendant appeals. The question is not raised, and therefore we do not decide, whether respondent in his first complaint elected to pursue his remedy of rescission and should be bound thereby as to inconsistent relief now sought.

The contract of purchase contained the following clauses:

"1. Said machinery, (except belting, magnetos, carburetors, and other attachments or devices, not made by the company,) is purchased upon and subject to the following express warranty and agreement and no other, viz.:

"2. It is warranted to be well made of good material, durable with good care, and, if properly operated by competent persons, to be capable of doing as much and as good or better work than other makes of machines of equal size working under the same conditions on the same job.

"3. If, after its operation by the purchaser in the manner aforesaid for a period of six days from first use, said machinery shall fail to fulfill such warranty, written notice thereof by registered letter shall be given at once to J. I. Case T. M. Co., at Racine, Wis., stating wherein it fails to fulfill the warranty, after which notice, reasonable time shall be given the company to send a competent person to remedy the difficulty, unless it be of such nature that a remedy may be suggested by letter; the purchaser to render necessary assistance without compensation for labor or material furnished.

"4. If, after such notice and opportunity to remedy the difficulty, the company fails to make the machinery fulfill the warranty, the part that fails shall be. returned immediately by the purchaser, free of charge, to the place where it was received and the company notified thereof in writing at Racine, Wisconsin, whereupon, the company shall have the option to furnish another machine or part in place of the one so returned, which shall fulfill the warranty, or to return the money and notes or proportionate part thereof, received for the machine or part so returned, and this contract shall be rescinded to that extent and no further claim made on the company.

"5. Failure to make such trial or to give such notice or to return such machinery or parts, as aforesaid, shall be conclusive evidence of due fulfillment of the warranty. If any part of a machine (except belting, magnetos, carburetor, and other attachments or devices, not made by the company, which are not warranted,) shall fail, from defect of material, within one year from date of purchase, the company has the option to repair the same or to furnish a duplicate thereof, free of charge, on presentation of the defective part.

"6. It is agreed there is no express, implied, or statutory warranty by the company of quality, fitness, or capacity, of the goods above described other than or different from the printed conditional warranty aforesaid."

The amended complaint expressly declares upon a violation of the warranty contained in paragraph 2 above, and alleges:

"That beginning on or about the 26th day of August, 1929, and repeatedly and frequently up until about the 28th day of October, 1929, plaintiff offered to return the combined harvester and attachments to defendant, free of charge, at the place where the same was by him received, but that defendant at all of such times informed plaintiff that it would not accept the return of said machine and attachment at said place or any place, and that by reason of defendant's own acts and statements a tender of said machine to defendant at the place where received by plaintiff was and would have been at all such times a useless act."

Experts accompanied the machine when delivered and worked upon it at various times, in an endeavor to make it function, until toward the end of its operation. After the experts had left, and after Reilly, the last expert, had informed respondent that it could not be made to work, respondent continued to use the machinery until he had finished harvesting his own grain. On October 18, 1929, the parties agreed upon a settlement whereby the windrower was taken back and credit given respondent on his note. The six days notice of defects, required by paragraph 3 of the contract, *supra,* to be given appellant, admittedly was waived.

■■ In the absence of fraud, or circumstances amounting to a waiver, the stipulation in the contract (par. 4, *supra*) providing that where the seller fails to make the machinery fulfill the warranty, after notice of defects and opportunity given the company to remedy the same, the defective parts shall be returned, by the purchaser, to the place where received, and the seller given the opportunity to furnish a new machine or return the purchase price, must be complied with (55 C. J. 794, secs. 765, and 766); and no action for breach of warranty can be maintained unless the machinery is returned. The return, or offer to return, of the defective machinery was therefore a condition precedent to maintaining the present action. (*Wasatch Orchard Co. v. Morgan Canning Co.*, 32 Utah, 229, 89 Pac. 1009, 12 L. R. A., N. S., 540; *Consolidated Wagon & Machine Co. v. Barben*, 46 Utah, 377, 150 Pac. 949; *F. C. Austin Mfg. Co. v. Clendenning*, 21 Ind. App. 459, 52 N. E. 708; *J. I. Case T. M. Co. v. Badger*, 56 Ind. App. 399, 105 N. E. 576; *Nichols-Shepard Co. v. Rhoadman*, 112 Mo. App. 299, 87 S. W. 62; *Nichols & Shepard Co. v. Stubbs Thresher Co.*, 160 Ky. 694, 170 S. W. 4.)

■ The machinery was not returned to the place where it was received and respondent contends, first, that the requirement was unenforceable because the terms could not be literally complied with without committing trespass. (*J. I. Case T. M. Co. v. Scott*, 96 Wash. 566, 165 Pac. 485.) The contracts are very similar in the cited case and in the case at bar, which reads:

"J. I. Case T. M. Company, (Hereinafter called the Company), Racine, Wisconsin. You will please deliver on or before the 1 day of August, 1929, (or as soon thereafter as can furnish for transportation or delivery), to Twin Falls (Name of Railway Station) County Twin Falls, or other convenient station in the State of Idaho in care of Twin Falls Imp. Co., (Dealer or Company) for the undersigned purchaser, the following goods: . . . . The purchaser agrees to receive same on cars on arrival, pay Freight and Charges thereon, and settle for the total purchase price of $3326.50."

The place of delivery, therefore, is fixed at Twin Falls railway station, or other convenient station in the state of Idaho, in care of Twin Falls Implement Co. While there is no direct evidence as to where the machinery was in fact received, it is otherwise made to appear that it was at Twin Falls. The provision that the purchaser should receive it on board cars, is obviously not merely designed to fix the exact "place" of receipt, but to insure the payment of the freight and unloading charges by the purchaser. The machinery was bought at a certain price—the purchaser to pay the freight and unloading charges in addition. A substantial compliance with the provisions of pararaph 4, *supra*, is all that is contemplated. (See *Emerson-Brantingham Implement Co. v. Willhite*, 102 Kan. 56, 169 Pac. 549; *Briggs v. M. Rumely Co.*, 96 Iowa, 202, 64 N. W. 784.) A return of the machinery "to the place where it was received," under the circumstances of the instant case, required that it be delivered to appellant's dealer at Twin Falls, or the station where unloaded, and notice thereof given to appellant, in writing, at Racine, Wisconsin, as required by the contract. Respondent neither returned the machinery nor gave the required notice. Notwithstanding the holding in the Washington case above referred to, and cases cited therein, we think the provision under attack was sufficiently definite and therefore enforceable.

As shown by the evidence, the machine and accessories in question were not wholly valueless as alleged in the amended complaint and contended for by respondent at the oral argument. It was in operation much of the time over a period of eighty days, during which it harvested 700 acres of grain. While the machine was wasteful, and did not save all of the grain, it did recover most of it.

"To the general rule that a defendant may decline to return an article which is alleged to be wholly worthless upon asking for a rescission there is a well-defined exception in those cases where the parties have by their contract stipulated for such return as a condition precedent to the rescission, or as a remedy for the breach of the warranty."

(*Haynes v. Plano Mfg. Co.*, 36 Tex. Civ. App. 567, 82 S. W. 532.)

No charge of fraud is suggested by the amended complaint, but respondent also contends that appellant has waived the return of the machinery and notice thereof. The evidence principally relied upon to show that appellant waived a return of the machinery is respondent's own testimony. Omitting repetitions, it is to the following effect: That he told Mr. Homer, assistant district manager for appellant (see *Troendly v. J. I. Case Co., supra*), or the employee having charge of collections for the branch office at Salt Lake City, substantially as follows: That he wanted a definite understanding at that time (August 24, 1929) both as to the return of the machinery, or its continued operation; that before he did anything else he wanted that settled:

"I told him it was their machine. He says, 'What do you mean?' I says, 'I mean I cannot continue to operate that machine; it won't pay expenses and I can't do satisfactory work with it, and it belongs to the Case people; anything you want me to do with that machine I will do; if you want it hauled back to Twin or left there in the field I will do anything I can to help you out with it, but as far as I am concerned I am through with the deal' "; that Mr. Homer asked appellant to continue its operation, saying:

" 'The Case people will stand back of you; we will furnish you parts and repairs; we will see that you have expert help; we will send in and get anything that is needed to make that machine operate successfully' "; that the experts and agents of appellant had all told him, the Wells boys (Case dealers at Twin Falls), and Mr. Shuttle (their salesman) after purchase, and Mr. Davis (field man for appellant) before purchase, "that it was up to the Case people to make that machine work; to stay with it until it operated satisfactorily; that they were obligated to make the machine work successfully"; that Mr. Homer said: "We will make that machine do the work and operate successfully and satisfactorily"; that Homer was out again on the next job shortly after August 24, 1929:

"I told him they had failed to fulfill their promises; that they were not making the machine operate; that we were really having more trouble than before, and that I could not continue to operate it and it was up to them to do it—to take it and operate it if they could, and if they couldn't that I would take the machine wherever they wanted it or do anything they wanted with the machine"; Homer "told me to go ahead and do the best I could."

The witness further testified that Mr. Homer said he would obtain a "Holt pickup" and put it on that machine.

"If I had a good pickup I would be able to cover more acreage; possibly enough to cover expenses; I went ahead expecting him to get the Holt pickup and put it on"; this was never done.

Respondent was operating on his own acreage, one of the last jobs he worked on, when Mr. Reilly spent the whole day with him and told Troendly that it was impossible to fix the machine. Before that they (appellant's agents) had always stated they would make it work.

These conversations with Mr. Homer were had within two weeks after appellant had received the machinery and at a time when an honest effort was being made by both parties to make it function properly. Troendly retained the machinery and operated it for at least fifty days thereafter, and operated it for a time after he was told by the expert, Reilly, that the machinery could not be made to work properly. It will be observed that Mr. Homer did not tell respondent to take the machinery anywhere, nor to leave it any particular place. He simply asked him to continue to operate it with expert help furnished, together with parts and repairs, evidently expecting that it could be made to work satisfactorily.

Even if, under the evidence, appellant has waived the *time* within which the defective machinery should be returned under the contract, such fact did not waive the requirement that, before the present action could be maintained, the machinery must be returned. (55 C. J. 814, sec. 795; *J. I. Case T. M. Co. v. Badger, supra.*) Since the contract gave appellant an opportunity to remedy any defect in the

machinery, and required it to be returned to the seller if the latter failed to make it comply with the warranty, the mere fact that appellant's agents requested respondent to keep the machinery under promise to make it work "was not a waiver for all time to come of the seller's right to insist on the return, but a waiver only during the time that the seller was engaged in an effort to make the machinery work, and 'for a reasonable time thereafter." (*J. I. Case T. M. Co. v. Rose,* 191 Ky. 433, 230 S. W. 545, 546; *Wilson v. Nichols & Shepard,* 139 Ky. 506, 97 S. W. 18; 55 C. J. 814.)

 Generally the fact of waiver is a question to be determined from the evidence by the jury. (*Advance-Rumely T. Co. v. Yancy,* 100 Okl. 197, 229 Pac. 149; 55 C. J. 862.) Nevertheless, where all the facts, if admitted to be true, fail to establish a waiver as a matter of law, the jury's finding cannot stand. (See *Smith v. Minneapolis T. M. Co.,* 89 Okl. 156, 214 Pac. 178, 181; 55 C. J. 862.)

 Printed in bold type on the face of the contract of purchase sued on was the statement:

"NO BRANCH MANAGER, SALESMAN, EXPERT, LOCAL DEALER OR ANY OTHER PERSON UNLESS AUTHORIZED IN WRITING BY AN OFFICER OF THE COMPANY HAS ANY AUTHORITY TO WAIVE, ALTER OR ENLARGE THIS CONTRACT OR TO MAKE ANY NEW OR SUBSTITUTED OR DIFFERENT CONTRACT, REPRESENTATION OR WARRANTY. SALESMEN, MECHANICS AND EXPERTS ARE NOT AUTHORIZED TO BIND THE COMPANY BY ANY ACT, CONTRACT OR STATEMENT."

Similar provisions have been held binding upon the purchaser as giving notice of the want of authority of certain agents to alter the contract. (*Reeves & Co. v. Lewis,* 25 S. D. 44, 125 N. W. 289, 29 L. R. A., N. S., 82; *A. B. Farquhar Co. v. Hardy Hardware Co.,* 174 N. C. 369, 93 S. E. 922; *Otto Outing Co. v. McFredrick,* 146 Md. 106, 125 Atl. 886; *Fetzer v. Haralson,* (Tex. Civ. App.) 147 S. W. 290; *Gaar, Scott & Co. v. Nelson,* 166 Mo. App. 51, 148 S. W.

417.) Even if it should be conceded that the language used by Mr. Homer, and other agents of appellant, was such as to imply a waiver of the stipulation requiring a return of the machinery, nevertheless, respondent is confronted with the notice contained in the contract that they were without authority to waive any of the stipulations in the contract, unless authorized by an officer of appellant in writing; and no such authorization is shown.

The facts, or the language of the contracts construed, in the cases cited by respondent, to the effect that the restrictions upon the powers of agents contained in the contract of sale do not prevent its subsequent modification by an agent, distinguish such cases from the one at bar and will not be further referred to.

In view of the conclusions reached it is not deemed necessary to consider other questions raised by this appeal. Judgment reversed and the cause remanded with directions to make findings and enter decree on appellant's cross-complaint without taking further testimony. Costs to appellant.

Lee, C. J., and Budge, Givens and Leeper, JJ., concur.