[No. 22274. Department Two. May 27, 1930.]

JOHN GUGLIELMELLI, *Appellant*, v. WALLA WALLA GARDENERS' ASSOCIATION, *Respondent.*[1]

*John C. Hurspool* (*E. S. Snelling,* of counsel), for appellant.

*Herbert C. Bryson,* for respondent.

FRENCH, J.—The respondent is a cooperative farm marketing association, organized under the laws of the state of Washington. The appellant joined the association in January, 1925, entered into a growers' contract, which reads as follows:

## "GROWERS' CONTRACT

"THIS CONTRACT made and executed in duplicate, by and between the Walla Walla Gardeners' Association, a co-operative marketing association, with its officers and principal place of business at Walla Walla, Washington, party of the first part, and herein designated as the association, and John Guglielmelli party of the second part, hereinafter designated as the grower,

"WITNESSETH:

"WHEREAS, the association is a co-operative marketing association organized under the laws of Washington permitting and regulating such associations, and the grower is a *bona fide* member of said association along with numerous other members, and

"WHEREAS, It is the object and purpose of the grower and other members of the association in forming the association to have the association act as the sole marketing agency of all produce grown by the grower and other members of the association without profit to the association, as such, in the conduct of the marketing business. It is agreed and recognized that the efficiency of the association to the grower and other members depends very largely upon the entire co-operation of the grower members in the conduct of the association business, and,

"WHEREAS, the grower has paid the association the sum of $300 as a membership fee in the association, which entitles the grower to all of the benefits accruing to him as such member so long as the grower continues to comply with the articles of incorporation, by laws of the association and this contract.

"Now THEREFORE, be it agreed between the association and the grower, as follows:

"I.

"That this contract, the articles of incorporation and by laws of the association are to be interpreted, construed and applied together as fixing and determining the rights and privileges of the parties hereto, and a breach of this contract by either party hereto shall subject such party to such liability and penalty as is now, or may hereafter be, provided by the by laws of the association.

"II.

"THE GROWER AGREES:

"1. To sell and deliver, and does hereby sell and convey to the association all vegetables and produce of every kind and character grown, produced or owned by him which is suitable for general marketing purposes during the entire term of this contract which is not to exceed ten full years from the date hereof.

"2. He shall properly prepare all crops or produce so grown by him for the market according to state grade and packing rules and regulations in force during the current year of production and marketing of any season's crop; if any especial pack or crating be required by the association to conform to any marketing regulation the grower shall comply therewith upon being advised thereof. Any deduction or charge or loss sustained by the association by reason of the grower furnishing an inferior grade of produce, or in a pack or condition which is defective or faulty for the purpose of shipment and delivery through common carrier, any such loss, deduction or damage shall be collected from the grower and deducted from his sales; the determination of the association as to grade, pack, classification and differential in prices shall be binding and conclusive upon the grower.

"3. That he has not heretofore contracted to sell, market, consign or deliver any of the vegetables or produce hereafter during the term of this contract to any person, firm, or corporation, and that all of his produce, suitable for market, shall be sold through and

delivered to the association for its handling and marketing thereof.

"The right and privilege is reserved to the grower to sell to grocery stores in accordance with the following rules: All vegetables to be washed and loose in the box; no crate nailed up; spinach not to exceed five boxes at any time; green onions, not exceed ten dozen; dry onions, not to exceed three sacks; rhubarb loose and by the dozen bunches; asparagus, not to exceed ten dozen bunches.

"4. If the grower transfers in any manner all or any part of the crop of produce grown, owned or controlled by him to any person, firm or corporation or association in violation of this contract and without the association's written consent thereto, such transfer shall be deemed entirely subject to this contract and the transferee or transferees shall be obliged to deliver such commodities under the terms of this contract the same as the grower would have been required to do hereunder. If the said transferee fails or refuses so to do the association may maintain its action for damages, or a suit for specific performance of the contract as it may elect, and in any such suit the association shall be entitled to recover all of its costs and disbursements and such attorney's fees as the court may adjudge reasonable.

"5. In event the grower shall mortgage any crop covered by this contract he shall immediately notify the association thereof and obtain permission of the mortgagee for the association to handle said crop in accordance with the terms of this contract; permitting the association to first deduct from the gross sales its commission as is hereinafter provided for and such proper and necessary advances as the association may have made the grower for the expenses of producing, delivery, packing and marketing such crop; after the deduction of such items the grower hereby authorizes the association to apply the balance of the proceeds of sale of such crops and pay the same, or so much thereof as may be required, to the owner and holder of the mortgage security.

"6. Should the grower make sale or transfer of his real estate or the lease on real estate under which he

is farming the same, and on his vegetables as produced in the Walla Walla valley during the term of this contract, any and all indebtedness of every kind and character due the association from the grower shall become immediately due and collectible notwithstanding the fact that any note or other evidence of indebtedness may bear a later due date; in event of such sale or transfer the association shall have, and is hereby given, a first lien upon such crops for the full amount of any indebtedness due it from the grower.

"7. The grower agrees to pay the association 10 per cent of the gross sale price received by the association for any produce so handled by the association hereunder; in event the directors of the association during the term of this contract, shall determine that a greater, or a less, percentage is required to cover its costs of operation, the grower hereby ratifies, accepts and confirms the modification by the board of directors of the association.

"8. The grower agrees that in event he shall violate the terms of this contract in any material manner, or if he shall violate the articles of incorporation or by laws of the association that he will submit to trial any charges made against him in that behalf according to. the by-laws of the association, and the method of procedure outlined in the by laws for making trial of charges against members and imposing penalties is hereby agreed to by the grower.

"THE ASSOCIATION AGREES:

"1. That it will use its best efforts to handle, sell and deliver the produce of the grower so that the grower may derive the best possible results from the sale of his produce. In so selling such products it is agreed that the association will sell the vegetables of the grower in pool with the vegetables of like kind, quality, grade and classification, delivered to it by other grower-members of the association under contract similar to this, and that it will obtain the best prices it can under market conditions, taking into consideration also the marketable condition of the grower's products.

"2. That at such times as the directors of the association may determine there shall be made a partial

or total settlement with the grower for products sold by the association and full and partial payments made from time to time as may be determined by said board of directors. At least once each year, during the term of this contract, full and complete settlement for that year's business shall be made between the grower and the association, and in such settlement any balance found due and owing either the grower or the association from the other shall be paid and settled.

"3. At the annual meeting of the association the proper officers of the association shall submit to the members thereof, including the grower, a statement showing what, if any, sum has been collected by the deduction of percentages on gross sales made by it above the costs and expenses of operation of the business for said period. This overplus, if any, shall be refunded the members, including the grower, on a tonnage basis pro. rata and in accordance with the amount in quantity and quality of produce handled and sold by the association acting for the members, including the grower.

"It Is Mutually Agreed:

"1. That in event the directors of the association shall hereafter or have at the time this contract is executed decided to create a reserve fund for the purposes authorized and permitted by the articles of incorporation and by laws of the association, and have determined or shall determine the percentage to be deducted from the gross sales of the produce of members to be placed in said reserve fund that such percentage may be deducted from the gross sales of the grower, placed in such reserve fund and an accurate account of the exact amount withheld for such purpose kept permanently in the records of the association. When, if ever, the reserve fund is discontinued and refunded to the members, the association shall repay the grower his proportion and pro rata of such fund as determined upon a basis of his amount contributed thereto plus the accumulations and earnings thereof.

"2. That inasmuch as the association is a co-operative marketing association, now operating and hereafter to be operated without profit to the association

as such, and the profits and benefits to be derived from the existence and operation of the association is entirely to the members, including the grower, from the co-operative marketing of products, it is agreed that a breach of the terms of this contract by the grower cannot be determined to the association; but it is agreed that a breach hereof by the grower is of vital detriment and damage to the other members of the association who have contributed their membership fee and their pro rata on their produce for the operation and maintenance of the association, and that vital injury and damage, by lack of co-operation and the failure of the grower to comply with this contract will result to the other members of the association. Therefore, it is agreed that upon charges of the violation of this agreement by the grower, and a failure of the grower to comply with the articles of incorporation and by laws of the association, by reason of such damages, shall work a complete forfeiture of membership of the grower, together with all accumulations to his credit in any fund of the association, including the reserve fund, and all of his rights and privileges as such member, providing he be fairly adjudged guilty of a violation thereof in the form and manner directed and required by the by laws of the association.

"IN WITNESS WHEREOF, this contract has been executed in duplicate at Walla Walla, Washington, March 9th, 1925.

"THE WALLA WALLA GARDENERS' ASSOCIATION, INC.,
"Approved and attested:
"Richard Bono, Secretary.
"(Seal)        By Richard Bono, Secretary,
                 "John Guglielmelli, Grower."

This action was brought by appellant to recover damages, claiming that respondent had breached the contract by failing and refusing to receive and sell certain vegetables raised by appellant during the years 1926 and 1927, and also to recover the three-hundred-dollar membership fee which he paid for the purpose of joining the association. The respondent denies that it breached the contract in any way, alleged that, be-

cause of flagrant violations of the contract on the part of the appellant, he was tried and expelled from the association and his membership fee forfeited in accordance with the terms of the contract entered into and the by-laws of the association. The violations of the contract complained of appear to have occurred in the spring of 1928. It seems to be admitted that the association proceeded strictly in accordance with the terms of its by-laws to expel the appellant from the association and forfeit his membership fee. It also does not appear to be disputed that, beginning in the early part of the year 1928, the appellant ignored the association, his excuse being that the association refused to receive and sell all the produce grown by him during the years 1926 and 1927.

Generally speaking, the facts of this case are not very seriously in dispute. We think that it is clear from the evidence that the marketing association, during the years 1926 and 1927, failed and refused to take all of appellant's onions. We think the evidence clearly shows, and in fact there seems to be no serious dispute on this question, that, particularly in the year 1926, there was, generally speaking, no market for onions, and that the association, during the latter part of the season at least, was unable to dispose of onions at a price that would pay the marketing cost. It clearly appears from the record in this case that appellant tendered his onions to the association, and that the association refused to accept them. It also clearly appears that he requested permission to sell his onions independent of the association, and that this request was refused; and appellant's testimony is, and this is not disputed, that the association notified other dealers in the immediate vicinity of Walla Walla not to purchase from the appellant because he was a member of the association.

Plaintiff's contract being of record, there are cases which hold that, where outside buyers knowingly purchase from a member of such an association, the buyers themselves may, under certain circumstances, become responsible in damages. *Hollingsworth v. Texas Hay Ass'n*, 246 S. W. (Tex. Civ. App.) 1068; *Northern Wisconsin Co-op. Tobacco Pool v. Bekkedal*, 182 Wis. 571, 197 N. W. 936.

We think the testimony in this case fails to show a failure on the part of the association to properly take and handle produce, other than the onion crop, raised by the appellant, and in any event fails to show, as suggested by appellant, that he tendered produce which was not received, other than onions, or made any request to sell outside of the association such other crops, so that, in the discussion of this matter, we are considering only the onion crop. As to that crop, the question here involved is this, as we see it: Where a co-operative marketing association such as this is unable to take and sell the crop of its member because of unfavorable market conditions, is such association justified in refusing to permit the member of the association to recoup his loss in so far as possible by peddling out his crop on the best terms obtainable?

In the case of *Washington Cranberry Growers v. Moore*, 117 Wash. 430, 201 Pac. 773, 204 Pac. 811, 25 A. L. R. 1077, this court upheld the validity of contracts such as that involved here, and held that an injunction will lie to prevent the grower from violating the terms of his contract. If an injunction will lie to compel the grower to deliver his produce to the association under a contract such as this, then it must necessarily follow that the association is compelled to accept such produce when it is tendered or show legal reason for failure so to do. We think the evidence in

this case clearly shows, however, such legal reason, namely, that it was impossible for the association to market such produce at a price that would yield any return whatsoever to the grower. The evidence is clear that an attempt was made to market three carloads of onions, and that the returns were insufficient to pay the cost of marketing. We think it is clear from the testimony that the association used its best endeavors to find a market for the onions, and that such endeavors were unavailing. We think, the market conditions being as they were, the association was justified in refusing to accept appellant's onions.

He, however, requested permission to market his onions himself, and the testimony shows that at least one other grower peddled his onions at a price that to some extent at least permitted him to recoup his loss. The association refused to permit appellant to follow this course. He had gone to all of the expense of growing the onions, and the testimony clearly indicates that he would have been able to sell at least some of them at a price greater than the cost of harvesting. Since the association refused to permit him to recoup his loss, we think it breached the contract. It should be remembered that the law under which this association is formed permits contracts to be entered into "requiring the members to sell, for any period of time not over ten years, *all or any specified part* of their agricultural products or specified commodities . . ." Rem. Comp. Stat., § 2892. This contract might have limited the requirements of the association to a particular part of the crop, but it did not do so.

When the association refused to accept any portion of the crop, the grower was at liberty to sell such portion to any buyer he could find. *Kansas Wheat Growers' Ass'n v. Toothaker,* 128 Kan. 469, 278 Pac. 716. It cannot be the law that, where a crop has been pro-

duced ready for market, the marketing association, acting even in the best of faith, can say to the grower, "We cannot sell your product, and you will not be permitted to sell it." To permit this to be done would require the wanton waste of food products and would be contrary to public policy.

We hold that, when respondent failed to accept appellant's onions when tendered, and refused to permit him to sell them himself, the contract was breached, and substantially breached.

The trial court found that the evidence was so vague and uncertain as to the loss sustained that no judgment could be entered therefor. In this we agree with the trial court. There is nothing in the record on which we can base an opinion as to how much more than the cost of harvesting and marketing the appellant would have been able to obtain, had he been permitted to sell his onions. We think, however, that a substantial breach of the contract such as this justified appellant in withdrawing from the association, and that he is entitled to recover from the association his fee of three hundred dollars.

Reversed with instructions to enter a judgment for the appellant in the sum of three hundred dollars, and costs in both courts.

MITCHELL, C. J., HOLCOMB, FULLERTON, and MAIN, JJ., concur.