[No. 23685. Department Two. August 10, 1932.]

FRANK DOWNS *et al., Respondents,* v. D. M. SMITH
*et al., Appellants.*[1]

*Sharpstein & Smith,* for appellants.

*H. B. Noland,* for respondents.

TOLMAN, C. J.—This is an action to rescind a contract for the purchase of certain real property, including the personalty used in connection therewith, on the ground of false representations and fraud.

The action was tried to the court, resulting in a decree rescinding and canceling the contract and awarding a judgment in favor of the plaintiffs for the amount

[1]Reported in 13 P. (2d) 440.

paid by them on the purchase price, with legal interest. From that judgment the defendants appeal.

The real estate in question was improved and equipped as a natatorium and dance hall, and had been operated by the seller as a public place of amusement. The sale included the fixtures and equipment as well as water rights, etc., appurtenant to the land. The contract was dated April 28, 1931. The purchase price was $35,500, of which $5,000 was paid in cash, the balance being payable at the rate of $400 per month, beginning June 1, 1931. Respondents took possession of the property probably early in May. They did not make either the monthly payment due June 1 or the one due July 1, and on July 6 they were given a notice to pay the defaulted installments within ten days under pain of forfeiture. The payments were not made, but within the ten-day period this action was instituted.

The allegations as to false representations and fraud are numerous, and the evidence given in support of them is voluminous and amply sufficient, if believed, to warrant the judgment which was rendered. We have read the record with care, and while we agree with the trial court that some of the allegations are not supported by evidence sufficiently clear and convincing, others are so supported and those which are proven call for the relief granted. No good purpose would be served by setting out in detail the mass of testimony pro and con. It is perhaps sufficient to say that the evidence convinces us that the appellants represented that they had a good and sufficient water right appurtenant to the land which would supply ample water at all times for the filling of the natatorium pool as often as needed; that in addition and for emergencies there was a well on the premises equipped with a pump and an electric motor, which had a capacity of delivering three hundred gallons of water per

minute to the pool; and that as often as it was necessary to change the water, the pool could be drained, cleaned and refilled from a storage pond supplied by the irrigation ditches under the water right, all after the close of business on any evening and be fit and ready for use the next morning, usually with but little artificial heat, because the water drawn from the storage pool would be naturally warmed by exposure to the sun.

These representations were, to all practical intents and purposes, false and misleading. While it is true that appellants had an adjudicated water right, it was of such a class, with so many other rights prior to it, as to furnish no water after about the middle of June. The well, as equipped, could not be made to refill the pool in less than twenty-five days of operation, which of course rendered the pool useless as a commercial proposition. The only way to fill the pool after the water from the irrigation ditches failed was to buy water from the adjacent city of Walla Walla at a money cost of over forty dollars for each filling of the pool and a time cost of sixty hours consumed in the filling, thus putting the pool out of commission for fully half the time. Moreover city water required far more heating than water delivered through the irrigation ditches to the storage pond, and there was a further loss of time and an added expense at each refilling of the pool of perhaps twenty to twenty-five dollars on that account. These actual conditions rendered the plant wholly unprofitable as a natatorium. It was equally unprofitable as a dance hall, but we see no need to discuss the evidence upon that feature. The facts, as we find them to be, amply support the judgment for the respondents for the purchase money paid.

It is urged, however, that respondents, having

been in default in their payments, were as a matter of law not entitled to maintain this action. It is true that one who seeks to enforce the terms of a contract against another or to recover damages for the breach of a contract by another must show that there has been no breach on his own part. This is on the theory that one who has himself breached a contract can not thereafter enforce the contract against the other party. *Reddish v. Smith,* 10 Wash. 178, 38 Pac. 1003, 45 Am. St. 781, and many cases following. So far as we are aware, that rule has never been applied to an action to rescind a contract on the ground of fraud. Fraud vitiates everything, and a contract obtained by fraud is, the fraud being established, a nullity. *Producers' Grocery Co. v. Blackwell Motor Co.,* 123 Wash. 144, 212 Pac. 154.

This action having been commenced before the expiration of the time given by the notice within which to perform, respondents were not technically in default, and the rule invoked by appellants would not therefore apply in any event. *Kuehl v. Scott,* 66 Wash. 318, 119 Pac. 742. But the sounder reason is that respondents were not seeking to enforce rights under the contract. They sought its entire abrogation and rescission because of fraud, and having established the fraud, the contract became as though it never had existed, and appellants having in their hands money rightfully belonging to respondents, equity requires its repayment.

"Neither did plaintiff's default preclude him from rescinding on the ground of the alleged misrepresentations of Sinanides. In the denial of a hearing by the Supreme Court in *de Bairos v. Barlin,* 46 Cal. App. 665, 674, [190 P. 188, 192], where the facts were similar to those of the instant case, it is said that the rule invoked 'applies only to cases where a rescission is sought or claimed by one party to an executory con-

tract on the ground of a breach of the contract by the other party. . . . We know of no case which holds that such rule applies to a case where the vendee in default on payments due on the contract seeks to avoid and rescind it for fraud of the vendor in procuring its execution, or for mistake inducing its execution.' '' *Lombardi v. Sinanides,* 71 Cal. App. 272, 235 Pac. 455.

Something is said upon the subject of the recovery being too large because no allowance was made for the value of the use and occupation during the time respondents were in possession. The answer seems to be that there was no proof of any such value. Indeed, taking the evidence as a whole, it appears rather overwhelmingly that one attempting to operate this property would lose money daily, and of course there can be no value to use and occupation under such conditions.

The judgment is affirmed.

HOLCOMB, MAIN, BEALS, and MILLARD, JJ., concur.