WM. G. TANNHAEUSER COMPANY, Appellant, vs. HOLIDAY HOUSE, INC., Respondent.

*June 5—June 26, 1957.*

For the appellant there were briefs by *Frederick & Mantyh* of Milwaukee, and oral argument by *William J. Mantyh*.

For the respondent there was a brief and oral argument by *Gerald Hayes, Jr.,* of Milwaukee.

CURRIE, J.    The civil court by its findings of fact found that the failure of the plaintiff to light the sign from October 1, 1954, to June 7, 1955, except for the inadequate lighting provided during the month of December, 1954, "was a substantial failure on the part of the plaintiff to carry out the provisions of the contract." Such finding was specifically approved in the memorandum opinion filed by the circuit court on the appeal to that court. On the appeal to this court the plaintiff challenges such finding and contends that it substantially performed the contract as a matter of law.

The difficulty of laying down any general test of what constitutes substantial performance of a contract is emphasized by the following statement appearing in 3 Corbin, Contracts, p. 767, sec. 704:

"It is not easy to lay down rules for determining what amounts to 'substantial performance,' sufficient to justify a judgment for the contract price (subject to a counterclaim

for injury, if asserted) in any particular case. *It is always a question of fact,* a matter of degree, a question that must be determined relatively to all the other complex factors that exist in every instance. The variation in these factors is such that generalization is difficult and the use of cases as precedents is dangerous." (Emphasis supplied.)

The finding of fact by the civil court, that there was a substantial failure of performance by the plaintiff, expressly negatives the claim of substantial performance by it. Such finding must stand if not contrary to the great weight and clear preponderance of the evidence. *Schroeder v. Schroeder* (1952), 262 Wis. 133, 54 N. W. (2d) 49.

The purpose of placing the sign where it was located was in large part dictated by the fact that people attending sports events at the Arena would view it as they left such building. The heavy attendance at the Arena was during the late fall, winter, and early spring, being the period when the sign was not lighted. The attendance at evening events there is far greater than those scheduled during daylight hours. Ninety per cent of the defendant's business is done between the hours of 5 p. m. and 2 a. m. The president of the defendant testified that the sign was without value unlighted. On the other hand, the plaintiff offered in evidence photographs of the unlighted sign taken at night which disclose that it was readable at a considerable distance because illumined by other lights in the vicinity. However, the photographer who took such photographs testified that there was a great deal of difference between lighted signs in the vicinity and the unlighted sign in question.

The most damaging testimony to plaintiff was an admission made by its president in his testimony. The plaintiff had submitted a two months' bill to the defendant for rental of the sign at a rate of one half the stipulated contract rental. When asked if such bill was submitted on the theory that the unlighted sign was worth only half the value of the lighted sign, he answered, "That is correct as a fair value."

He then attempted to qualify such answer by claiming the fair rental for the unlighted sign should have been more than half the contract rate because the contract called for lighting the sign less than twelve hours each day. The implication is clear that he would not have made such qualification of his answer if the contract had required the sign to be lighted twelve out of each twenty-four hours.

Furthermore, it strikes us that people emerging at the conclusion of an evening's performance at the Arena, who desired to go to some place to eat, if they did see the unlighted sign, might well conclude from the failure to have the lights turned on that defendant's place of business was not then open.

There was ample evidence to support the trial court's finding that the failure of the plaintiff to light the sign for an eight months' period, except for the temporary inadequate lighting during December, 1954, was a substantial breach of performance by the plaintiff. Because the sign was especially contracted for by the defendant to attract business from the night patrons of the Arena, the absence of lighting could not help but defeat such objective. We consider particularly pertinent the following quotation from 3 Corbin, Contracts, pp. 771, 772, sec. 706:

"Extremely important factors in solving the present problem [of substantial performance] are the character of the performance that the plaintiff promised to render, the purposes and ends that it was expected to serve in behalf of the defendant, and the extent to which the nonperformance by the plaintiff has defeated those purposes and ends, or would defeat them if the errors and omissions are not corrected."

Plaintiff's brief quotes from Restatement, 1 Contracts, pp. 402, 403, sec. 275, which lays down six rules for determining whether there has been such a material breach of contract by one party as will excuse the other party from performance. Particular emphasis is placed upon the fourth stated rule which stresses the degree of hardship which will

result to the party who has failed to perform if the contract should be held to be terminated for such breach. Such brief points out that the plaintiff at the time of trial had invested $5,820.90 in the sign. However, the first stated of such six rules imposes the test of the extent to which the injured party will obtain the substantial benefit which it could have reasonably anticipated. According to the testimony of defendant's president, no substantial benefit was received by the defendant from the unlighted sign. As we have seen, the problem of substantial breach and substantial performance is one of degree. While the expenditure of the $5,820.90 by the plaintiff is an element to be considered we do not deem it to be controlling of the outcome here.

On the issue of the appeal as to substantial performance by the plaintiff, we hold that an issue of fact was presented, and the finding of fact of the civil court adverse to the plaintiff on this issue is not against the great weight and clear preponderance of the evidence.

The defendant takes the position that, in the absence of substantial performance by the plaintiff, the plaintiff's breach bars it from recovering anything from the defendant. However, 5 Williston, Contracts (rev. ed.), p. 4118, sec. 1473, states there is an increasing tendency by courts in recent years not to apply such harsh rule, but to permit a plaintiff, who has substantially breached a contract, to recover in those situations where the defendant would be unjustly enriched if recovery were denied. This court has adopted this more-lenient rule in *Georgiades v. Glickman* (1956), 272 Wis. 257, 273, 75 N. W. (2d) 573, and *Valentine v. Patrick Warren Construction Co.* (1953), 263 Wis. 143, 164, 165, 56 N. W. (2d) 860. However, in order for the plaintiff to recover anything on such theory in the instant case the burden was upon it to prove how much the unlighted sign had benefited the defendant. 5 Williston, Contracts (rev. ed.), p. 4141, sec. 1482. This burden was entirely unmet by the plaintiff

as it assumed that it was entitled to the full contract rental unless the defendant proved some damage under its counterclaim. This assumption on plaintiff's part was entirely erroneous absent the finding that it had substantially performed its contract.

We now come to the last contention advanced by the plaintiff, that the "noncancellation" clause of the contract took away the defendant's right to terminate for substantial breach, and limited the defendant to the sole remedy of recovering its damages by way of counterclaim, or offsetting the same against the plaintiff's cause of action for the stipulated rental of the sign. Neither party has presented the court with any authorities interpreting such a clause, nor has the court been able to discover any by independent research.

We are not persuaded that the parties intended the interpretation of this noncancellation clause urged by the plaintiff. For example, let us suppose that the plaintiff erected the sign but neglected to paint any advertisement of defendant's business thereon, and this condition continued for a substantial portion of the contract period. We cannot believe that the defendant would be barred by the noncancellation clause from abrogating the contract for substantial breach. If this be true, then the degree of plaintiff's breach would seem to be immaterial so long as its performance fell short of substantial performance.

The words of the clause, *"This is a firm contract* and cannot be canceled, except" for the occurrence of the two specified events, seem to us to be indicative of an intent to impress upon the defendant that a binding contract had been entered into which could not be canceled by it except in case one of the two specified events occurred. We do not deem that the word *"canceled"* had reference to a termination for substantial breach, and so hold.

*By the Court.*—Judgment affirmed.