[No. 34668. Department One. November 6, 1958.]

DAVID KRAMER et al., *Respondents*, v. J. J. ZAPPONE, JR. et al., *Appellants.*[1]

[1]Reported in 330 P. (2d) 1072.

*Clarence M. George,* for appellants.

*Morrison, Lake, Cael & Huppin (Gordon E. Lake* of counsel), for respondents.

FINLEY, J.—The defendant, Zappone Industries, is a sole proprietorship, engaged principally in the manufacture and sale of aluminum storm doors and in the sale of metal awnings. The defendant, J. J. Zappone, is the owner of Zappone Industries, and hereinafter will be referred to as defendant. The plaintiff, Air-Vent Awning Company, is a partnership, engaged principally in the manufacture and sale of aluminum awnings. Hereinafter, it will be referred to as if it were the sole plaintiff.

David Kramer, a duly authorized representative of the plaintiff, seeking to interest defendant in the purchase of unassembled awnings manufactured by the plaintiff, made certain representations concerning the quality of the awnings and the process used in painting them. After considerable negotiation, defendant was induced to sign an order on June 29, 1954, for shipment to him of various items used in fabricating or making the awnings. Each component part was listed and priced individually on the order; a twenty per cent discount was given on the entire purchase price.

When defendant received the unassembled awning parts, he looked at only a portion of them, and, on September 16, 1954, notified the plaintiff by letter that some of the awning

materials had arrived in a damaged condition, and that the damage was caused by plaintiff's method of packing for shipment. On December 15, 1954, defendant wrote plaintiff that he had opened several cartons of the material and for the first time had discovered that the paint job was not as Kramer had represented it to be. In this letter he enclosed a check for five hundred dollars as partial payment of the purchase price of the awnings. On February 15, 1955, the defendant notified the plaintiff that he was returning all merchandise which he had received. However, when defendant returned the goods, he retained material of the value of the five hundred dollars which he had previously paid on account. Plaintiff refused to accept the returned merchandise, and it was later sold by the carrier to cover charges for storage.

The plaintiff brought this action for the unpaid balance of the purchase price. The defendant cross-complained for rescission on the basis of alleged misrepresentations made by plaintiff to induce the sale. Upon trial before a jury, the verdict was for the defendant.

Thereafter, the trial judge granted plaintiff's motion for judgment notwithstanding the verdict and entered judgment for the plaintiff and against the defendant for the balance of the purchase price of the awnings. Defendant has appealed.

In granting the judgment n.o.v., the trial court determined as a matter of law that appellant, by his course of conduct, had not rescinded the contract of sale. He based this decision on two grounds: First, that the contract in question was not severable, and that appellant's retention of part of the goods as security for his payment of five hundred dollars waived any right appellant had to a rescission; secondly, that, even though the contract had been severable, appellant had not acted accordingly, because the goods retained by him were selected at random rather than on the basis of whether or not they were defective.

In *Buckeye Buggy Co. v. Montana Stables*, 43 Wash. 49, 85 Pac. 1077, the court said:

"We believe it to be a rule, that if several articles are sold for a single and entire consideration, without any apportionment of the purchase price as between the several articles, the contract of sale is entire and cannot be severed, except by agreement of the parties. On the other hand, if several articles are sold, and a separate price is agreed upon for each, although a single instrument of conveyance may be executed reciting a single consideration for the whole, yet, for sufficient cause shown, the contract may be rescinded as to a part and enforced as to the remainder."

■ It is true that in the instant case an individual price was listed for each component part of the awnings. But we believe that this was done primarily for the purpose of calculating the total purchase price, and that it did not evidence an intention to make this a severable contract. As respondent pointed out in its brief, the entire order when put together constituted a specific number of awnings. It was not so many hammers and so many bolts; but it was a sale of integral parts for the construction of a definite number of awnings. These parts were priced individually to compute the total amount of the order.

■ In *Greenwood v. International Harvester Co.*, 122 Wash. 603, 211 Pac. 727, this court, quoting from *Case Threshing Machine Co. v. Scott*, 96 Wash. 566, 165 Pac. 485, pointed out that

" 'The true test seems to be that the different parts are separate and divisible if the part that does fulfill the warranty is useless without the part that fails to do so.' "

And the court continued by stating:

"This language is manifestly incorrect, and shows that the word 'not' should have preceded 'separate,' so that the rule should read:

" 'The true test seems to be that the different parts are not separate and divisible if the part that does fulfill the warranty is useless without the part that fails to do so.' "

■ Certainly, in the case at bar, the appellant placed the order for a certain number of awnings. He was not ordering spare or stock parts. Therefore, regardless of the fact that he might make some incidental use of certain of these nuts, bolts, or panels, the fact remains that in relation to

the order itself it was necessary that all the parts be as warranted so appellant could assemble the awnings. In other words, if part of this order did not fulfill the warranty, the purpose of the order was frustrated.

 Just as decisive of this controversy are the appellant's actions after he discovered the alleged defects in the awning parts. He testified that his foreman retained enough merchandise to cover the five-hundred-dollar advance, and that this merchandise was selected at random. The appellant retained goods that by his own testimony were defective. If this contract had been severable, the appellant made no attempt to make a severance. To do so he would have had to return all the goods that were defective and retain only those that met the respondent's warranty. Appellant admittedly did not do this.

The appellant argues that even though this contract might not be severable it is still not necessary, in all cases, to make a complete tender and return of whatever he has received under the contract. Appellant cites and relies upon *Bariel v. Tuinstra*, 45 Wn. (2d) 513, 276 P. (2d) 569, wherein the court quoted with approval this rule from 13 C. J. 621, § 680:

" 'In order to rescind a contract for fraud, the party defrauded must as a general rule restore, or offer to restore, the consideration which he has received under the contract. The trend of the later cases seems to be toward *a reasonable and equitable application of the rule,* and to hold that it requires a plaintiff to do merely what equitably he ought to do.' (Italics ours.)"

The appellant contends that here he has done everything that he equitably should be required to do.

 When is it not necessary for the buyer to make complete restitution in order to seek rescission? There are several situations where the courts have declared that complete restitution was not necessary. Among these are cases where the subject matter received by the buyer has been destroyed through no fault of the buyer; or situations where the buyer has received goods for consumption or resale, and they have been consumed or resold as was expected.

And, in *Bariel v. Tuinstra, supra,* where the person seeking rescission in the prayer of his complaint asked that " 'the parties be restored to their condition prior to the sale,' " we held that this amounted to "an offer to do equity and to restore to . . . [the seller] all personal property described by the contract and in the complaint." In other words, the buyer in the *Bariel* case had done "what equitably he ought to do." However, in the instant case appellant made no offer to return the goods. He retained a certain amount of the goods *merely as security for the five hundred dollars he had paid on the purchase price.* The rule that a buyer must return the goods to effect a rescission has some exceptions; but we are not persuaded to extend these to cover the factual situation which is before us now.

Since we believe that the trial court was correct in granting judgment n.o.v., its judgment is affirmed.

HILL, C. J., MALLERY, ROSELLINI, and FOSTER, JJ., concur.