[No. 132-40725-2. Division Two. March 13, 1970.]

CARL FRISELL, as *Executor, Respondent and Cross-appellant,* v. ARTHUR NEWMAN *et al., Appellants.*

*Parr, Alexander & Cordes* and *Clifford F. Cordes, Jr.,* for appellants.

*Lester Stritmatter,* for respondent.

ARMSTRONG, C. J.—This appeal arises from a judgment entered in a new trial granted plaintiff in *Frisell v. Newman,* 71 Wn.2d 520, 429 P.2d 864 (1967). In the original action Amanda T. Hooker, an elderly widow, alleged the breach of a fiduciary relationship by defendant realtors in the sale of her home property. She sought alternatively to rescind the sale or to recover the reasonable value of her property at the time of the sale, January 23, 1961. Mrs. Hooker died before the matter came to trial and Carl Frisell, the executor of her estate, was substituted as plaintiff. The action was dismissed at the conclusion of plaintiff's case and judgment entered accordingly. From this judgment plaintiff successfully appealed. The judgment was reversed and the cause remanded for a new trial.

During the second trial the trial court dismissed with prejudice the defendants Arthur Newman and Dora Newman, husband and wife, doing business as Town & Country Real Estate, and Horace E. Boone and Harold Boone, doing business as Boone & Boone Realty, leaving as the only appellants, the defendants Charles Van Meter and James B. Whisler, doing business as Larch Mountain Homes. The trial court found for the plaintiff and rescinded the transaction. Title to the disputed property was to vest in plaintiff upon repayment of $3,659.09 paid by defendants under the contract terms, reimbursement of $300 for the installation of a water pump upon the property by defendants and the repayment of $322.44 real estate taxes paid by the defendants. Plaintiff was granted Supreme Court and superior court costs previously incurred in prosecuting his cause of action.

Defendants Charles Van Meter and James B. Whisler, doing business as Larch Mountain Homes, now appeal the judgment of rescission. Plaintiff cross-appeals from that portion of the judgment awarding defendants reimbursement of payments under the contract, money expended

installing the water pump and for property taxes paid by defendants.

The facts have been concisely set forth in full in *Frisell v. Newman, supra*. We do not see that the evidence received in the new trial resulted in a change or addition of any determinative facts as presented in the original trial. We adopt the facts as stated in *Frisell v. Newman*, because there was no substantial change of facts in the second trial. A brief recitation of facts is necessary for an understanding of this case.

In January of 1961, Mrs. Hooker, a 74-year-old arthritically crippled widow, living in a state of near isolation on her 15-acre tract of land near Olympia, put her property up for sale in order to qualify for welfare assistance. The property was appraised at $160 per acre and listed through Boone & Boone Realty of Olympia in order to secure the benefits of a multiple listing service. Although there was testimony of value varying from $160 to $500 per acre, the trial court, in its oral opinion, found that the value at the time in question did not exceed $160 per acre. There were no findings of fact made as to value.

The listing was disseminated to other members of the multiple listing service on January 21, 1961. Defendant Charles Van Meter, an associate broker of Town and Country Real Estate, owned and operated by defendants, Arthur and Dora Newman, determined that this would be an advantageous purchase for defendant Larch Mountain Homes, a property development business operated by defendant James B. Whisler and himself. On that same day, after viewing the property, he submitted an offer of $2,625 ($625 down and $50 per month), for the entire 15 acres and through Boone & Boone Realty secured Mrs. Hooker's signature on an earnest money agreement to that effect which allowed her to live in the house rent free for the remainder of her life.

Mrs. Hooker subsequently became disenchanted with her bargain and refused to fulfill her part of the agreement. After aborted litigation and further negotiations, defend-

ants Van Meter and Whisler, on October 31, 1961, obtained Mrs. Hooker's signature on a real estate contract which, in part, provided that defendants would make a $1,312.50 down payment with the balance of the $2,625 purchase price to be paid in $60 per month payments. Defendants also agreed to maintain and repair "as needed" the house during the occupancy by Mrs. Hooker. The house was then in a bad state of repair. The trial court did not find that these negotiations and the execution of the real estate contract constituted either a knowing waiver or a ratification of any defenses to the transaction Mrs. Hooker may have had up to that time.

A 6 per cent commission of the purchase price was withheld from the down payment and distributed as follows: 3 per cent to the multiple listing service, 70 per cent of the balance to Town and Country Real Estate (of which defendant Van Meter received 60 per cent), and 30 per cent to Boone & Boone Realty.

Mrs. Hooker soon expressed dissatisfaction over the lack of repairs to the house. Defendants secured the deed to the property through the escrow agent. Mrs. Hooker quit the premises as uninhabitable and demanded repairs or cancellation of the contract. Her demands were refused and she commenced this action for rescission or damages.

In *Frisell v. Newman, supra,* the court concisely stated the rule of law at 525-26:

> We start from the general and basic premise that, under ordinary circumstances, a real-estate brokerage firm with whom property is appropriately listed for sale becomes the agent of the seller for the purpose of finding a purchaser. . . . From this agency relationship springs the duty and obligation upon the part of the listing broker to exercise the utmost good faith and fidelity toward his principal, the seller, in all matters falling within the scope of his employment. . . . Corollary to and inherent in such realtor's responsibility to his principal, is the rule that the realtor cannot, legally or ethically, purchase or acquire, directly or indirectly, an interest in his principal's property without the explicit consent of his principal based upon a full disclosure by

the realtor of all pertinent and material facts within the realtor's knowledge bearing upon the transaction. . . . And, a failure on the part of such realtor to make the required disclosure and obtain the necessary consent amounts to a constructive fraud rendering the transaction voidable or the realtor otherwise liable at the instance of the principal, and/or, in proper cases, his heirs or personal representatives. . . . Thus, where it appears that such a realtor has, directly or indirectly, purchased or acquired an interest in his principal's property, the burden of coming forward with proof of good faith, full communication of all known facts, and the informed consent of his principal rests upon the realtor.

Our Supreme Court found that the members of the multiple listing service, under the circumstances of this case, became authorized subagents of Boone & Boone Realty in seeking the sale of Mrs. Hooker's property. As such they owed to Mrs. Hooker the obligations of good faith, fidelity, complete disclosure, and the burden of establishing an informed consent to Mr. Van Meter's direct or indirect purchase of her property.

In granting a new trial the Supreme Court concluded at page 529 that

appellant's evidence, disclosing the circumstances surrounding Mr. Van Meter's acquisition of an interest in Mrs. Hooker's property, established the essential basis for cancellation of the transaction or other appropriate relief. The burden of establishing respondents' good faith, full disclosure, and Mrs. Hooker's informed and unreserved consent to the transaction thereafter resided with respondents.

On rehearing the trial court determined that this direction was controlling and stated in its oral decision:

I don't think that the evidence adduced at this trial has changed the situation at all, or has actually given us anything differently than the Supreme Court had to deal with, or that this Court passed upon the first time.

The finding of fact upon which the trial court based its determination is as follows:

That during the course of the varied transactions, the defendant Van Meter, as a real estate salesman and rep-

resentative of Town and Country Real Estate, a member of the said Multiple Listing Bureau, did not personally reveal or divulge, nor did anyone else personally reveal or divulge to Hooker (other than what Hooker may have been able to ascertain from the reading of the documents admitted as exhibits in this case) the nature of the Multiple Listing Real Estate Bureau of Olympia, Inc., the nature of the relationship between the parties to the sale of the said real property, nor the fact that from said commission paid by the said Hooker a part of said commission was paid to Town and Country Real Estate and a part thereof to the defendant Van Meter as salesman.

There was substantial evidence to support this finding.

Defendants, in the new trial, produced evidence which was in the main devoted to valuation of the disputed property. The remainder went to the question of the extent of repairs made to the Hooker residence. Under the facts presented Mrs. Hooker's notice of defendant Van Meter's status as buyer and agent, his sharing in the sales commission, and the nature of the multiple listing bureau was restricted to her reading of the documents of the sale and to any questions she may have asked as a result of that reading. This warranted the trial court's finding that there was not a full disclosure of Mr. Van Meter's status and Mrs. Hooker's informed and unreserved consent.

■ Plaintiff challenges that part of the judgment awarding repayment of $3,659.09 for payments made under the contract, $300 for installation of a pump and $322.44 for payment of real estate taxes to defendants. Plaintiff argues that the figure of $3,659.09 was an incorrect computation of the payments made by defendants under the contract. We do not find any error or miscalculation of this amount; it was based on the two payments made by defendants to plaintiff plus 6 per cent interest from the time of payments to the date of judgment. Under the circumstances of this case defendants are entitled to reimbursement for payments made under the contract terms and to legal interest on sums paid by them on the rescinded contract. *See Jones v. Grove*, 76 Wash. 19, 135 P. 488 (1913); *Tungsten Prods.*

*Inc., v. Kimmel,* 5 Wn.2d 572, 105 P.2d 822 (1940), and *Spencer v. Houtt,* 29 Wn.2d 252, 186 P.2d 613 (1947).

 Plaintiff also argues that none of the payments under the contract should have been refunded in that defendants had the use of the property and that this amount should be retained by plaintiff for rental. We would agree that the rental value of the property may be allowed as a set-off or credit if there was evidence to establish that value. *Johnson v. Stalcup,* 176 Wash. 153, 28 P.2d 279 (1934); *Thompson v. Huston,* 17 Wn.2d 457, 135 P.2d 834 (1943). However, we find nothing in the evidence to indicate the rental value of the property.

Plaintiff also challenges the defendants' recovery of $300 for a water pump installed on the disputed premises. There is evidence in the record to show that the pump was installed by defendants for use by Mrs. Hooker, that the value of the installed pump was $300 and that the pump subsequently disappeared. We find no reason to disturb the trial court's determination that defendants should be reimbursed for their expenditures.

The real property taxes paid by defendants in the amount of $322.44 while they held title to the disputed property, we think, were rightly ordered to be repaid by the plaintiff. We find nothing in the record to show whether defendants or plaintiff had use of the land other than the period Mrs. Hooker occupied the house. We see no reason to disturb the trial court's determination in this regard.

Affirmed.

PEARSON and PETRIE, JJ., concur.