[No. 99-40501-1. Division One. April 27, 1970.]
Panel 2

J. RICHARD GOLOB *et al., Respondents,* v. GEORGE S. MAY INTERNATIONAL COMPANY, *Appellant.*

*Gavin, Robinson, Kendrick, Redman & Mays* and *Robert R. Redman,* for appellant.

*Boose & Garrison* and *Roger K. Garrison,* for respondents.

HOROWITZ, A. C. J.—Plaintiffs were awarded damages for breach of contract in an action tried by the court below sitting without a jury. Defendant appeals, its assignments of error raising basically the question as to the proper measure of recovery.

The evidence supports the following statement of the case. Plaintiffs are engaged in extensive farming and cattle feeding business in Yakima County. Their annual sales are about two million dollars. Between 1961 and 1964 the venture failed to show profits commensurate with the investment. At best, the venture was breaking even.

Defendant, a national management consultant firm, persuaded the plaintiffs to utilize defendant's management consulting services for the purpose of improving the efficiency and profit level of the plaintiffs' business. Among other things, defendant represented that the plaintiffs' business should be returning "a 5% minimum return on their sales" and defendant proposed to help plaintiffs achieve that return by making management recommendations. Plaintiff Richard Golob testified that defendant's representative, Mr. Hess, "simply represented the company as being very adequately capable or competent in the agriculture and cattle-feeding field . . . Mr. Hess allayed any fears that the George S. May Company would not be capable of analyzing our business." Defendant's executive secretary testified that defendant tended to specialize in small to medium sized business areas and that "The May Company occupies a little bit of a unique position in the management consultant field . . ." He further testified that they "would be peculiarly able to do a study of a kind that was undertaken here as distinguished from some other firm . . ." explaining that that was so "from the standpoint of experience."

After a preliminary survey in August, 1966, for which plaintiffs paid defendant, the parties executed a contract about September 20, 1966. By the terms of that contract, plaintiffs agreed to pay defendant at the rate of $33 per hour to a limit of 220 hours, plus or minus 10 per cent leeway, and to pay their own stenographic expenses, and defendant, in turn, promised to perform specialized management advisory services which are described in general terms in the contract but are detailed in a so-called "Job Manual" delivered to the plaintiffs. The detailed services so described are listed in the margin below.[1]

Defendant's representatives worked on the plaintiffs' premises from September 20 to October 8, 1966, spending 247 man-hours analyzing plaintiffs' business operation, consulting with the plaintiffs, transmitting various reports and data to and from the defendant's San Francisco offices, and submitting various recommendations to them. Defendant's representatives informed plaintiffs that defendant's San Francisco offices were cooperating and participating in the work undertaken. Defendant billed plaintiffs currently and in anticipation of complete performance, plaintiffs paid billings in the total sum of $7,600 and further paid the sum of $119.12 for typing services which under the terms of the contract they were required to pay. On October 8, 1966, the

---

[1] 1. Segregate separate operations and produce pro forma statements for each operation.

2. Firm delineation of each enterprise in the operation.

3. Determine per pound per head per grade per day cost with purpose being to determine point at which each animal should be released or to determine when it should be—or safely can be held.

4. Establish formulas or charts based on market predictions and current costs to make this information a consistent tool or gauge.

5. Based upon the above, establish a method of determining the amount of investment that can be put into the buying and selling operation.

6. Prepare necessary standard procedures governing use of prepared material.

7. Dependent upon forms, procedures and data developed, determine need for additional clerical help.

8. Indoctrinate principals [sic] in use of control tools developed.

9. Make recommendations in other areas as needed.

last of defendant's representatives left the Yakima area and did not thereafter return to the plaintiffs' place of business.

By October 8, 1966, the defendant had compiled a Job Manual for the possession and use of the plaintiffs. This manual consisted of three progress reports, a series of specific recommendations considered of a minor and subordinate nature, most of which were accepted and approved by the plaintiffs, and certain suggested forms for use in the conduct of plaintiffs' business. The defendant's performance produced some information concerning certain of the nine described services to be rendered as described in the Job Manual, but there was no performance whatsoever with respect to the important Job Manual items 3, 4, 5 and 9.

On October 7, 1966, plaintiffs called to the attention of the defendant's representatives the nature of work yet to be done. Plaintiffs were then furnished a written memorandum of the unperformed work, substantial in nature, and performance of that work was promised within 1 week. The promised work was not performed and plaintiffs' repeated calls to the defendant concerning the matter were not answered. There was testimony from the plaintiffs, and particularly from the plaintiff, Richard Golob, that because the defendant's work was never completed "it's valueless to us." The trial court found that the contract

> was performed in part but that at the conclusion of Defendant's performance, the contract remained unperformed to a substantial degree; that said contract is an indivisible contract and the portions thereof not performed render the partial performance of the Defendant *worthless* to the plaintiffs.

(Italics ours.) In his memorandum decision, after analyzing the defendant's part performance, the court indicated the sense in which he used the word "worthless."

> This work would, of necessity, have had to go on from the very beginning and perhaps to different conclusions, but nonetheless the same thinking and investigating processes would have had to be started all over again and done to completion. While there is no testimony as to the value of such service by another agency, . . . we are requesting of the plaintiff that they do a useless act.

Defendant appeals, contending, first, that the court erred in overruling defendant's objection to the following question and answer:

Q Now, Mr. Frame, we also went into the question as to whether or not the job was complete and whether or not it could be completed, and I would ask you at this time in that same context and in light of Mr. Redman's question, would it be practical for Golob & Sons to get a firm to complete this particular job as outlined and proposed by the May Company?

A Theoretically, it could be completed. From the practical standpoint, I don't believe that it could be by another firm who does not know and understand the particular objectives that the George S. May people had in mind of what they were definitely going to do. An outside firm doing it now would come in and take a new look and probably start out all over again.

Defendant objects to the evidence on the ground that it is irrelevant and immaterial to the claimed applicable measure of damages; namely, the reasonable cost of completing performance of the contract. For the reasons we next discuss, we are of the opinion that the trial court did not err in receiving evidence objected to and that the court applied the proper measure of recovery.

The contract between the parties called for services from the defendant involving business judgment informed by experience. Defendant does not claim that the instant contract was a severable contract with consideration apportioned. The contract here was properly treated as an entire contract, to accomplish nine types of services for an entire maximum price based upon the number of hours involved. The nine types of services to be performed were part of an interdependent whole, having as their ultimate common purpose the rendition of recommendations from an expert that would improve the profit level of the plaintiffs' business. Unless the defendant made the recommendations promised, the defendant would substantially fail to perform its contract. The court found that the "contract remained

unperformed to a substantial degree." See *Kramer v. Zappone*, 53 Wn.2d 115, 330 P.2d 1072 (1958) and *Saletic v. Stamnes*, 51 Wn.2d 696, 321 P.2d 547 (1958). Defendant does not contend that it did not breach the contract nor does it claim that the breach was justified or excused. Its basic claim is that plaintiffs are not entitled to recover at all for failure to prove recoverable damages for breach of contract.

In our opinion the court below applied the correct measure of damages whether the action and evidence below be considered one for recovery of damages for substantial breach of contract or one for restitution.[2] In the former action, the aggrieved party affirms the contract and seeks recovery for the monetary value of substituted performance to the extent unperformed; *i.e.*, the reasonable cost of performance elsewhere when the contract is executed.[3] He wishes to place himself in as substantially as good a position as if the contract had been fully performed.[4] If the part performance by the aggrieved party is as a practical matter such that it has to be done all over again, then, in effect, the defendant has failed to perform at all and the aggrieved party seeking recovery for the monetary value of substituted performance must again pay the price of complete performance. Here, the testimony objected to was accepted by the trial court as establishing the fact that the part performance under the kind of contract here involved was such that it was worthless in the sense

---

[2]Restatement of Contracts § 326 (1932); *cf.*, *Powers, Inc. v. Wayside, Inc.*, 343 Mass. 686, 180 N.E.2d 677 (1962).

[3]*Winkenwerder v. Knox*, 51 Wn.2d 582, 320 P.2d 304 (1958); *Lockit Cap Co. v. Globe Mfg. Co.*, 158 Wash. 183, 192, 290 P. 813 (1930); *Cahalan Inv. Co. v. Yakima Cent. Heating Co.*, 113 Wash. 70, 193 P. 210 (1920); 5 A. Corbin, Contracts § 1096 (1964); 25 C.J.S. *Damages* § 79 (1966).

[4]*Winkenwerder v. Knox*, 51 Wn.2d 582, 587, 320 P.2d 304 (1958); *Rathke v. Roberts*, 33 Wn.2d 858, 865, 207 P.2d 716 (1949); 5 S. Williston & G. Thompson, Law of Contracts §§ 1338, 1339 (rev. ed. 1937); Restatement of Contracts § 347, Comment b (1932).

that the work would have been done all over again.[5] True, aside from the contract price and the payments made pursuant to the contract, there was no separate evidence of the cost of substituted complete performance. However, the contract price of the contract entered into approximately 18 days before the defendant's breach, prima facie established that cost[6] and evidence of the plaintiffs' advance payment in full and of payment in full of stenographic expenses required to be paid by the plaintiffs under the terms of the contract without a returned complete performance, prima facie established the measure of plaintiffs' damages; *i.e.*, the reasonable cost of substituted performance. *Sanitary Linen Serv. Co. v. Alexander Proudfoot Co.*, 304 F. Supp. 339 (S.D. Fla. 1969), decided subsequent to the entry of the judgment below, supports the recovery below both on the theory of damages for breach of contract and on the theory of restitution next discussed.

■ Defendant contends that the rule that the reasonable cost of unperformed services is the proper measure of recovery is in effect the rule that it is the plaintiffs' duty to mitigate damages or to avoid unnecessary losses. Assuming, but without deciding that the defendant is correct in its contention,[7] the burden of proving a defense of avoidable

---

[5]The court first found that "the contract remained unperformed to a substantial degree . . ." *Harrild v. Spokane School Dist.*, 112 Wash. 266, 192 P. 1, 19 A.L.R. 811 (1920); *cf., Evers v. Broadview Dairy Co.*, 147 Wash. 570, 266 P. 726 (1928); 17A C.J.S. *Contracts* § 508 (1963); See Restatement of Contracts § 347, Comment c (1932).

[6]5 S. Williston & G. Thompson, Law of Contracts § 1485, see *id.* § 1483 (rev. ed. 1937); Restatement of Contracts § 347 Comment c (1932); *cf.*, 25 C.J.S. *Damages* § 79 (1966).

[7]Defendant cites *Lockit Cap Co. v. Globe Mfg. Co.*, 158 Wash. 183, 192, 290 P. 813 (1930) and 5 A. Corbin, Contracts § 1039 (1964). 5 S. Williston & G. Thompson, Law of Contracts § 1353 states "The plaintiff's right is to recover such damages as the defendant's wrong necessarily caused him. It is usually said that the plaintiff is under a duty to mitigate damages; but the truth seems rather to be that damages which the plaintiff might have avoided with reasonable effort without undue risk, expense, or humiliation are either not caused by the defendant's wrong or need not have been, and, therefore, are not to be charged against him."

losses or mitigation of damages is upon the defaulting party,[8] and defendant has not proved in monetary terms the extent of avoidable loss or the amount of damages in mitigation so as to diminish the damages otherwise recoverable. In that same connection, defendant points out that it expressed its willingness after action brought to complete performance of the contract and thereby avoid plaintiffs' claimed damages. Assuming the offer was timely, then, under the rule as to burden of proof above noted, the defendant failed to show that its belated offer of performance would not involve an undesirable relationship with the plaintiffs. If it would, the offer was immaterial. See 5 A. Corbin, Contracts § 1043, p. 275 (1964).

 The alternate theory of restitution available to an aggrieved party for a substantial breach of contract permits recovery upon equitable principles[9] of payments made under the contract.[10] Restitution in such a case proceeds on the theory of disaffirmance of the contract[11] and when there

---

[8]*Norm Advertising, Inc. v. Monroe Street Lumber Co.*, 25 Wn.2d 391, 171 P.2d 177 (1946); *Burr v. Clark*, 30 Wn.2d 149, 190 P.2d 769 (1948); *McCurdy v. Union Pac. R.R.*, 68 Wn.2d 457, 466, 413 P.2d 617 (1966); 5 A. Corbin, Contracts § 1039 (1964); Annot., 134 A.L.R. 242, 254, 257 (1941).

[9]*Cone v. Ariss*, 13 Wn.2d 650, 126 P.2d 591 (1942). The willingness to do equity is required in rescission cases. *Hopper v. Williams*, 27 Wn.2d 579, 179 P.2d 283 (1947). Hence the necessity in practical terms of restoration to status quo ante as near as may be. *Yount v. Indianola Beach Estates, Inc.*, 63 Wn.2d 519, 387 P.2d 975 (1964). When there is no literal rescission, restitution approximates equitable relief. Restatement of Contracts § 349 Comment on subsection (1)a (1932).

[10]*Bean v. Hallett*, 40 Wn.2d 70, 240 P.2d 931 (1952); *Guglielmelli v. Walla Walla Gardeners' Ass'n*, 157 Wash. 109, 288 P. 251, 77 A.L.R. 385 (1930); *Krause v. Mariotto*, 66 Wn.2d 919, 406 P.2d 16 (1965); *Economy Swimming Pool Co. v. Freeling*, 236 Ark. 888, 370 S.W.2d 438 (1963); *Gordon v. Southgate Park Corp.*, 341 Mass. 534, 170 N.E.2d 691 (1960); *Stires v. Park Bar Restaurant, Inc.*, 71 Ohio L. Abs. 242, 130 N.E.2d 369 (1954); 5 S. Williston & G. Thompson, Law of Contracts § 1455 (rev. ed. 1937); Restatement of Contracts §§ 350, 384 (1932); Restatement of Restitution §§ 1, 108 (1937).

[11]*Cone v. Ariss*, 13 Wn.2d 650, 126 P.2d 591 (1942); Restatement of Contracts § 347 Comment b (1932); See 5 S. Williston & G. Thompson, Law of Contracts §§ 1454-1455, 1457, 1459-1460, 1478 (rev. ed. 1937).

is no literal restitution, approximates the relief of rescission,[12] that is, being restored to one's original position as if no contract had been entered into.[13] If the defaulting party has partly performed and his breach is not willful[14] and if the part performance has enriched the aggrieved party, the defaulting party may recover or set off the monetary value of his part performance against the aggrieved party's claim.[15] This is so because in equity and good conscience it would be improper for the aggrieved party to retain the benefits of the defaulting party's part performance without paying for it—the aggrieved party otherwise would be unjustly enriched.[16] If, however, the part performance is worthless[17] or if the fact of benefit[18] or the

[12]Restatement of Contracts § 349, Comment subsection (1)a (1932).

[13]See note 11 *supra.*

[14]*Schmidt v. North Yakima,* 12 Wash. 121, 40 P. 790 (1895); see *Continental Coal Co. v. United Fuel Co.,* 176 Wash. 271, 29 P.2d 395 (1934); Restatement of Contracts § 357 (1)(a) (1932); 5 S. Williston & G. Thompson, Law of Contracts § 1475 (rev. ed. 1937); *cf., id* § 1477; 17 Am. Jur. 2d *Contracts* 380 (1964); *cf., Badere v. Goodrich,* 63 Wash. 650, 116 P. 274 (1911).

[15]Restatement of Restitution § 4(f) (1937); *Frisell v. Newman,* 2 Wn. App. 85, 467 P.2d 340 (1970); *Bean v. Hallett,* 40 Wn.2d 70, 240 P.2d 931 (1952); *Cone v. Ariss,* 13 Wn.2d 650, 126 P.2d 591 (1942); *Downs v. Smith,* 169 Wash. 203, 13 P.2d 440 (1932); See 5 S. Williston & G. Thompson, Law of Contracts §§ 1352, 1477, 1478, 1482 (rev. ed. 1937); 17 Am. Jur. 2d *Contracts* §§ 379, 380 (1964).

[16]*Bill v. Gattavara,* 34 Wn.2d 645, 209 P.2d 457 (1949); *Lloyd v. Ridgefield Lumber Ass'n,* 38 Wn.2d 723, 231 P.2d 613 (1951); *Puget Sound Alumni of Kappa Sigma, Inc. v. Seattle,* 70 Wn.2d 222, 422 P.2d 799 (1967); *Seekamp v. Small,* 39 Wn.2d 578, 237 P.2d 489 (1951); Restatement of Restitution § 1 (1937).

[17]The principle has been applied, although with restrictions here inapplicable, in the absence of evidence of value whether with respect to things or services or upon affirmative showing of no value. *Downs v. Smith,* 169 Wash. 203, 13 P.2d 440 (1932); *Hager v. Standard Island Creek Coal Co.,* 109 W. Va. 490, 155 S.E. 540 (1930); 17 Am. Jur. 2d *Contracts* § 513 (1964); 5 S. Williston & G. Thompson, Law of Contracts §§ 1483, 1460A, 1463, 1352 (rev. ed. 1937); Restatement of Contracts §§ 349 (2)(a), Comment on subsection (2)f, 357 (1932). The principle of restoration of benefits received as far as practicable, (*Yount v. Indianola Beach Estates, Inc.,* 63 Wn.2d 519, 387 P.2d 975 (1964)) is consistent with this principle.

[18]*Downs v. Smith,* 169 Wash. 203, 13 P.2d 440 (1932); *Wm. G.*

monetary value of such part performance is not proved[19] there is neither a showing of enrichment nor a showing that the retention of benefit of such services is unjust.[20] The burden of showing unjust enrichment and its value is upon the claimant defaulting party.[21]

In the instant case the court found that the defendant's part performance was "worthless to the plaintiffs." The phrase meant that the work undertaken by the defendant would have to be done all over again. Being worthless in that sense, plaintiffs were entitled to be restored to their status quo ante and to recover back moneys paid. *Sanitary Linen Serv. Co. v. Alexander Proudfoot Co., supra.* Defendant contends that plaintiffs have received some benefit from the defendant's performance, particularly the Job Manual. Assuming that this is so, the defendant failed to prove the monetary value of the Job Manual and failed to show that the plaintiffs were unjustly enriched thereby.

The evidence objected to was both relevant and material to the theory of recovery whether for breach of contract or for restitution. We find no error.

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.

---

*Tannhaeuser Co. v. Holiday House, Inc.,* 1 Wis. 2d 370, 83 N.W. 2d 880 (1957); Restatement of Contracts § 357, Comment on subsection (1)g (1932); 5 S. Williston & G. Thompson, Law of Contracts §§ 1474, 1475 (rev. ed. 1937).

[19]*Sanitary Linen Serv. Co. v. Alexander Proudfoot Co.,* 304 F. Supp. 339 (S.D. Fla. 1969); *Wm. G. Tannhaeuser Co. v. Holiday House, Inc.,* 1 Wis. 2d 370, 83 N.W. 2d 880 (1957); Restatement of Contracts § 326(b) (ii) (1932).

[20]See 5 S. Williston & G. Thompson, Law of Contracts § 1352 (1937).

[21]*Wm. G. Tannhaeuser Co. v. Holiday House, Inc.,* 1 Wis. 2d 370, 83 N.W. 2d 880 (1957); Restatement of Contracts § 357g (1932).